ESTATE OF Marion ATKINSON,
Respondent,

v.

MINNESOTA DEPARTMENT
OF HUMAN SERVICES,

and

Otter Tail County Department of Human Services, Respondent.

No. C9–96–335.

Supreme Court of Minnesota.

May 29, 1997.

**210**

Hubert H. Humphrey, III, Minnesota Attorney General, St. Paul, for Appellant.

Pemberton, Sorlie, Sefkow, Rufer & Kershner, P.L.L.P., Oscar J. Sorlie, Jr., Fergus Falls, for Respondent Estate of Marion Atkinson.

Waldemar B. Senyk, Otter Tail County Attorney, Kurt A. Mortenson, Assistant County Attorney, Fergus Falls, for Respondent Otter Tail County Dept. of Human Services.

## OPINION

STRINGER, Justice.

We consider here the issue of at what point in time the assets of a married couple, one institutionalized, must be evaluated for

---

1. Minn.Stat. § 256B.059 refers to the person who has been placed in an institution as the "institutionalized spouse." subd. 1(f) (1996).

purposes of determining eligibility under Minnesota's medical assistance program.

The Otter Tail County Department of Human Services ("the County") denied respondent Marion Atkinson's ("Marion") 1994 application for medical assistance ("MA") on the ground that, due to appreciation of her husband Merle's ("Merle") assets since the time of Marion's institutionalization in 1991, Merle's assets exceeded the maximum spousal share of $72,660 allowed under Minn.Stat. § 256B.059. On appeal, the State Commissioner for the Department of Human Services ("DHS") affirmed. On further review by the Otter Tail County District Court however, the court reversed, holding that a couple's assets may only be evaluated as of the time of the initial institutionalization of the spouse and, therefore, any appreciation in the community spouse's[1] assets after the date of institutionalization should not be taken into account in determining eligibility for MA. The court of appeals affirmed. We conclude that the applicable statutes require that all assets owned by a couple at the time of application for MA, less the spousal share determined at the time of institutionalization, are deemed available to the institutionalized spouse for purposes of determining eligibility. We therefore reverse.

A brief background of Minnesota's MA program will provide a context for our review. Medicaid, which is known as medical assistance in Minnesota, was enacted in 1965 as Title XIX of the Social Security Act and is designed to provide medical assistance to individuals whose income and resources are not sufficient to meet the costs of their necessary care and services. *Atkins v. Rivera,* 477 U.S. 154, 156, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131 (1986). The federal government shares the cost of Medicaid with the states that elect to participate in the program and, in return, the states are required to administer their programs in a way that complies with the federal statutes and regulations. *Id.* at 156–57, 106 S.Ct. at 2458–59.

MA is a needs-based program available to individuals who fit into one of two categories.

The spouse of the institutionalized person is referred to as the "community spouse." *Id.,* subd. 1(b).

The "categorically needy" receive MA by virtue of the fact that they are eligible for cash assistance under the Supplemental Security for the Aged, Blind, and Disabled (SSI) or Aid to Families with Dependent Children (AFDC) programs. *Id.* at 157, 106 S.Ct. at 2458–59. The "medically needy" are those people who, while not otherwise eligible for SSI or AFDC benefits, incur medical expenses in an amount that effectively reduces their income to roughly the same position as those who are eligible for those programs. *Id.* at 158, 106 S.Ct. at 2459. To be deemed medically needy, and therefore eligible for MA in Minnesota, an individual must own no more than $3,000 in assets as an individual or $6,000 in assets as a household, not including household goods and other excluded items,[2] and have an income not exceeding 120 percent of the eligibility threshold for AFDC benefits. Minn.Stat. §§ 256B.055, subd. 7 and 256B.056, subds. 3–4. Those whose assets exceed this eligibility standard are required to "spend down" their assets until they are at or below the threshold amount. *Atkins,* 477 U.S. at 158, 106 S.Ct. at 2459.

Prior to 1988, when a married person became institutionalized, all of the couple's assets were deemed available to the institutionalized spouse and were required to be spent down to the SSI eligibility limits—then approximately $1,800—before the institutionalized spouse would be deemed eligible for MA. H.R.Rep. No. 100–105(II), at 65 (1988), *reprinted in* 1988 U.S.C.C.A.N. 857, 888 (*hereinafter* U.S.S.C.A.N.). This policy had the effect of forcing the community spouse to spend down virtually all of the marital assets before the institutionalized spouse could be deemed eligible for assistance and had resulted in community spouses being forced to sue the institutionalized spouse for support or become prematurely institutionalized themselves. *Id.* at 892. To prevent community spouses from having to impoverish

themselves in this manner, Congress enacted the "spousal impoverishment" provisions of the Medicare Catastrophic Coverage Act of 1988 ("MCCA"), 42 U.S.C. § 1396r–5 (1996), which Minnesota codified as Minn.Stat. § 256B.059. These provisions were designed to end the pauperization of community spouses by allowing them to protect a sufficient, but not excessive, "spousal share" of the marital assets to meet their own needs while the institutionalized spouse was in a nursing home at Medicaid expense. U.S.S.C.A.N. at 888. At the time of Marion's institutionalization and asset assessments,[3] section 256B.059 read, in relevant part:

**Subd. 1. Definitions.** * * *

(c) "Spousal share" means one-half the total of all assets, to the extent that either the institutionalized spouse or the community spouse had an ownership interest at the time of institutionalization. * * *

**Subd. 2. Assessment of spousal share.** At the beginning of a continuous period of institutionalization of a person, at the request of either the institutionalized spouse or the community spouse, or upon application for medical assistance, the total value of assets in which either the institutionalized spouse or the community spouse had an interest at the time of the first period of institutionalization of 30 days or more shall be assessed and documented and the spousal share shall be assessed and documented. * * *

**Subd. 5. Asset availability.** (a) At the time of application for medical assistance benefits, assets considered available to the institutionalized spouse shall be the total value of all assets in which either spouse has an ownership interest, reduced by the greater of:

(1) $12,000; or

---

2. The homestead, household goods, personal effects, business assets, and motor vehicles up to a certain value are generally not considered in determining eligibility for MA. Minn.Stat. § 256B.056, subds. 2–3 (1996).

3. The statute was amended in 1993 and 1995, primarily to change the maximum and minimum dollar amounts considered available to the insti-

tutionalized spouse under subdivisions 3 and 5. Also, in the 1995 amendments, the introductory phrase, "At the time of application for medical assistance benefits * * *," in subd. 5(a) was changed to read: "At the time of initial determination of eligibility for medical assistance benefits following the first continuous period of institutionalization * * *."

(2) the lesser of the spousal share or $60,000;[4] * * * *

(c) After the month in which the institutionalized spouse is determined eligible for medical assistance, during the continuous period of institutionalization, no assets of the community spouse are considered available to the institutionalized spouse * * * .

(1990) (footnote added).

Marion entered the Pioneer Home nursing home in Fergus Falls on April 17, 1991 and immediately began receiving long-term care. An asset assessment completed by the Atkinsons on August 3, 1993 indicated that, as of the date of her institutionalization, Marion and her husband Merle had assets totaling $175,533, excluding their homestead and other excluded items. Marion, the institutionalized spouse, was deemed to have assets equal to the total value of all assets in which either spouse had an ownership interest, reduced by a "spousal share" equal to one-half of the total of all their assets up to a set maximum—in this case $72,660—which was allocated to Merle, the community spouse. Minn.Stat. § 256B.059. Therefore, pursuant to Minn.Stat. § 256B.059, subd. 3, $72,660 of the Atkinson's assets was allocated to Merle and the remaining $102,873 was deemed available to Marion for the purpose of determining whether she was eligible for MA. The computations are as follows:

| | |
|---|---|
| Total assets as of April 17, 1991 (date of institutionalization) | $ 175,533 |
| Spousal share allocated to each spouse (one half total assets) | − $ 87,766.50 |
| Less the statutory maximum allowed Merle | $ 72,660 |
| Excess | $ 15,106.50 |
| Spousal share allocated to Marion | $ 87,766.50 |
| Plus Merle's excess | + $ 15,106.50 |
| Assets deemed "available" for institutionalization expenses | $ 102,873 |

Over the next three years Marion spent down the excess assets and, when Merle applied for MA on behalf of Marion on November 3, 1994, her available assets based on the April 17, 1991 computation had shrunk from $102,873 to $1,537—clearly within the statutory eligibility limits. In that same time

period however, Merle's assets had increased from $72,660 to $149,684—well beyond the statutory maximum. On January 24, 1995 therefore, the county denied the application for MA on the basis that Merle's assets were $77,024 above the $72,660 maximum allowable for a community spouse. The county thereupon informed Merle that $77,024 needed to be spent down before Marion would qualify for MA.

The Atkinson's appealed the county's decision to the State Commissioner of DHS, arguing that the county and state agencies had misapplied the applicable statutes. The Atkinsons argued that it is the asset allocation made at the time of institutionalization that should control the amount of assets the community spouse is allowed and that any increase in the value of the spousal share, over and above the statutory maximum, between the time of institutionalization and the time of the application for MA, is not subject to the statutory maximum and may be retained by the community spouse. The county, on the other hand, argued that the allocation procedure was a two step process: first, an assessment of the total value of the couple's assets is made as of the date of institutionalization and a spousal share is calculated from this total value; second, at the time of application for MA, the spousal share calculated in step one is allocated to the community spouse, and the institutionalized spouse's eligibility for MA is determined based on the couple's remaining assets. The DHS Appeals Referee agreed with the county concluding that, under the statutes, "[t]he equal division of the assets at the time of nursing home entry in step one is solely for the purpose of evaluating whether one-half of the assets will be the maximum amount which can be set aside for the community spouse. When the Medical Assistance application is made, the set-aside for the community spouse is still determined in the context of the assets which are existing at the time of application." The Commissioner of Human Services adopted the referee's recommendation and affirmed the county's decision in an order dated April 28, 1995.

4. Another provision of the statute dictated that the $12,000 and $60,000 limits be adjusted annually based on the consumer price index. Minn.

Stat. § 256B.059, subd. 3. Thus, at the time of Marion's initial assessment, the maximum spousal share was $72,660.

The Atkinsons then appealed the commissioner's order to district court pursuant to Minn.Stat. § 256.045, subd. 7 (1996).[5] The district court reversed, determining that when the date of application for MA is later than the initial date of institutionalization, under Minn.Stat. § 256B.059, DHS must assess the value of the couple's assets as of the initial date of institutionalization in determining eligibility. The court held that only one asset assessment was allowed under Minn. Stat. § 256B.059, subd. 2, and that "[n]o matter when the assessment is completed, the assets assessed are those which either spouse had an interest in at the time of the first period of institutionalization of 30 days or more. * * * The Respondent is not allowed to look at the appreciation of the community spouses assets at the time of the application for medical assistance * * *." The commissioner appealed the district court's order and the court of appeals affirmed, similarly interpreting the applicable statutes as allowing a couple's assets to be assessed only as of the time of institutionalization. *Estate of Marion Atkinson v. Minnesota Dept. of Human Resources*, C9–96–335 (Minn.App. filed September 4, 1996) at 9.

■ At issue here is an agency decision that may be reversed only if the party challenging the decision establishes that the decision was:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by another error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1996); *see also Markwardt v. State Water Resources Bd.*, 254 N.W.2d 371, 374 (Minn.1977) (placing burden of proving one of the grounds listed in § 14.69 on the party appealing the agency decision). This court examines the agency's decision independently and need not accord any deference to the lower courts' review. *Minnesota Power & Light Co. v. Minnesota Public Utilities Comm'n*, 342 N.W.2d 324, 329 (Minn.1983). We do however, grant deference to the agency's interpretation of its governing statute. While we are not bound by the agency's interpretation, " '[w]hen the meaning of a statute is doubtful, courts should give great weight to a construction placed upon it by the Department charged with its administration.' " *Mammenga v. State Dept. of Human Services*, 442 N.W.2d 786, 792 (Minn.1989) (quoting *Krumm v. R.A. Nadeau Co.*, 276 N.W.2d 641, 644 (Minn.1979)).

■ The error we find in the district court ruling, affirmed by the court of appeals, is its holding that the wording of the statute permitted only *one* assessment and that, under subdivision 2, the couple's assets must be evaluated as of the initial date of institutionalization. Subdivisions 1 and 2 of Minn.Stat. § 256B.059 are clear that the spousal share is to be determined based on an assessment of the couple's assets as of the time of institutionalization, but subdivision 5 provides that, "*[a]t the time of application* for medical assistance benefits, assets considered available to the institutionalized spouse shall be the total of all assets in which either spouse has an ownership interest," reduced by the spousal share. Minn.Stat. § 256B.059, subd. 5 (1990) (emphasis added). Thus the assets of both spouses *at the time of application* are taken into account in determining eligibility for MA and the two step process implemented by DHS evolves: first, an assessment of the assets is made as of the time of institutionalization to determine the spousal share, and second, another assessment is made at the time of application for MA benefits to determine eligibility based on "the total of all assets in which either spouse has an ownership interest" at that time. *Id.*

The appropriateness of the two step procedure is reinforced by the provisions of 42 U.S.C. § 1396r–5, the federal statute to which section 256B.59 conforms. The federal statute requires that a couple's assets be

**5.** "Any party who is aggrieved by an order of the commissioner of human services * * * may appeal the order to the district court of the county responsible for furnishing assistance * * *." Minn.Stat. § 256.045, subd. 7.

assessed and the spousal share determined "as of the beginning of the first continuous period of institutionalization * * * of the institutionalized spouse." 42 U.S.C. § 1396r–5(c)(1)(A) (1992 & Supp. I 1997). The statute further provides:

> In determining the resources of an institutionalized spouse *at the time of application for benefits* under this subchapter, * * * all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse, * * * but only to the extent that the amount of such resources exceeds the amount computed under subsection (f)(2)(A) [6] of this section (*as of the time of application for benefits*).

42 U.S.C. § 1396r–5(c)(2) (emphasis and footnote added).[7]

The lower courts' reliance on the court of appeals' decision in *Dullard v. Minnesota Dept. of Human Services,* 529 N.W.2d 438 (Minn.App.1995) is misplaced. The critical distinction is that in *Dullard,* the institutionalized spouse had been deemed eligible and was receiving MA in Illinois before moving to Minnesota. *Id.* at 441. Because Minnesota permitted a lower spousal share than Illinois,

DHS informed the Dullards that Mrs. Dullard would not be eligible for MA until they had spent down their assets to the levels allowed by the Minnesota statute. *Id.* The court of appeals reversed, rejecting DHS's argument that Mrs. Dullard had begun a "new" continuous period of institutionalization when she entered the Minnesota institution and holding that a couple's assets may only be assessed as of the initial date of institutionalization. *Id.* at 448. Since both the state and federal statutes specifically provide that once the institutionalized spouse is determined to be *eligible* for benefits no resources of the community spouse shall be deemed available to the institutionalized spouse, 42 U.S.C. § 1396r–5(c)(4); Minn.Stat. § 256B.059, subd. 5(c), the court appropriately held that the state could not redetermine eligibility based on the community spouse's assets at the time of the move to Minnesota. Thus *Dullard* presented a fundamentally different fact circumstance than here, where the community spouse's assets appreciated in value *prior* to a determination of eligibility.

While the interpretation urged by the Atkinsons is appealing from a policy standpoint because it would provide a greater measure

---

6. 42 U.S.C. § 1396r–5(f)(2)(A)(ii) is analogous to Minn.Stat. § 256B.059, subd. 5 in that it provides for a "community spouse resource allowance" equal to "the lesser of (I) the spousal share computed under subsection (c)(1) of this section, or (II) $60,000 (subject to adjustment * * *)."

7. The statutory history of 42 U.S.C. § 1396r–5 further supports our interpretation of the statute. The House Report accompanying the proposed spousal impoverishment provisions of the MCCA, which later became section 1396r–5, makes it clear that the purpose of section 1396r–5 is to prevent the community spouse from being impoverished by having to spend down the entirety of the couple's assets to the SSI eligibility standards before the institutionalized spouse can become eligible for Medicaid benefits. U.S.C.C.A.N. at 888. The Report does state that the spousal share and the limit of the community spouse's share are to be calculated only as of the time of institutionalization. *Id.* at 894. It does not, however, demonstrate an intent by Congress to prohibit states from reassessing a couple's assets and determining *eligibility* based on the assets available at the time of application for benefits. On the contrary, the Report states:

> The Committee observes that, in many cases, the institutionalized spouse may not apply for

Medicaid benefits until months after his admission to a nursing home. Often these individuals and their spouses have "spent down" a significant amount of their life savings to pay the nursing home charges. *Repeated division of the couple's total resources into equal shares at each application or reapplication for benefits would result in the pauperization of the community spouse, as the couple's total resources would effectively be reduced to twice the resource eligibility standard, generally $3600, before the institutionalized spouse qualified for Medicaid. Precisely the opposite result is intended by the Committee. For this reason, the bill requires, in effect, that a "snapshot" of the couple's total resources be taken at the time of initial institutionalization, and that attribution of resources into spousal shares proceed on the basis of that "snapshot," regardless of the point at which the institutionalized spouse actually files application for benefits.*

*Id.* at 894 (emphasis added). Clearly, the purpose of taking a "snapshot" of the couple's resources at the time of institutionalization is to establish the spousal share so that the couple's resources are not continually halved with each application or reapplication for benefits, thereby impoverishing the community spouse.

of certainty by permanently fixing the amount that must be spent down to become eligible for MA upon institutionalization, we are constrained by the plain language of the federal and state statutes: the spousal share is to be fixed based on the couple's assets as of *institutionalization*, but eligibility is to be determined by reference to the total assets owned by the couple at the time of *application* for medical benefits. The judgment of the court of appeals is reversed and the order of the commissioner is reinstated.

Reversed.

ANDERSON, J., took no part in the consideration or decision in this case.