Maureen ZAHLER, Appellant,

Mitchell Zahler, Petitioner,

v.

MINNESOTA DEPARTMENT
OF HUMAN SERVICES,
Respondent.

No. CX–00–1354.

Court of Appeals of Minnesota.

April 3, 2001.

Gregory D. Dittrich, Woodbury, MN, and Gregory R. Troy, McLeod & Troy, St. Paul, MN, (for appellant).

Mike Hatch, Attorney General, Kerri Stahlecker Hermann, Assistant Attorney General, St. Paul, MN, and Douglas H. Johnson, Washington County Attorney, Nancy Nelson, Assistant County Attorney, Washington County Government Center, Stillwater, MN, (for respondent).

Considered and decided by PETERSON, Presiding Judge, SHUMAKER, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge *

Appellant challenges the decision by the Commissioner of the Department of Human Services, which upheld the determination made by the Washington County Community Services Department that appellant maltreated her son. Appellant argues that the county did not comply with the statutory investigation procedures out-

lined in Minn.Stat. § 626.556, subds. 10(a), (h), (i), (j), 10f (2000), so the maltreatment determination should be reversed. Because we conclude that the commissioner's decision was supported by substantial evidence, we affirm.

## FACTS

Appellant Maureen Zahler is the biological parent of C.M.Z. and N.M.Z., and petitioner Mitchell Zahler is their adoptive parent. On November 30, 1997, 16–year-old C.M.Z. placed a 911 call reporting that he and appellant were involved in an altercation. When a Washington County deputy sheriff arrived at the home, he observed that appellant was very upset and was yelling at the boys. Appellant informed the deputy that C.M.Z. had punched a hole in a wall and she wanted the boys out of the house. While appellant was reporting this to the deputy, he observed her strike C.M.Z. on the shoulder. The deputy could not recall if the strike was made with an open or closed hand. After separating the two, the deputy spoke with C.M.Z. who reported that he and appellant had argued and that she hit him in the chest. When the deputy asked C.M.Z. if he had any marks, C.M.Z. lifted his shirt, and the deputy saw a red mark in the center of C.M.Z.'s chest.

Appellant consented to having her sons placed with their biological father's parents, the Wilsons. On December 18, 1997, the Wilsons met with Francine Bass, a social worker with Washington County Community Services Department (the county), and reported possible incidents of maltreatment of the boys. The next day the Wilsons returned to the county with the boys to speak with the social worker, however, she only spoke with the Wilsons and C.M.Z. C.M.Z. reported several incidents of alleged maltreatment by appellant and petitioner and submitted a written statement describing them. On the same

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

day, both boys met with a Washington County Sheriff's Department investigator; only C.M.Z. was interviewed. Neither C.M.Z.'s interview with the social worker nor the investigator was recorded. The investigator placed a 72–hour hold on the boys, and the social worker determined that appellant and petitioner had maltreated the boys. The social worker attempted to set up an interview with appellant, but appellant's attorney cancelled the appointment.

On December 23, 1997, a Child in Need of Protection or Services (CHIPS) petition hearing was held, and the court directed that the boys remain with the Wilsons. The court ordered appellant, petitioner, and the boys to seek family counseling, and the petition was eventually dismissed.

Written notice of the county's maltreatment determination was addressed to petitioner only. After petitioner received notice, the parties requested that the county reconsider; the initial determination was upheld. The parties filed a notice of appeal to respondent Minnesota Department of Human Services (the department). Following hearings on July 15 and August 18, 1998, the commissioner's referee recommended affirming the county's determination that the boys had been maltreated by appellant and petitioner. On April 9, 1999, the commissioner accepted the referee's recommendation. On May 14, 1999, the commissioner corrected several factual findings, but denied the parties' request for reconsideration.

■ On June 11, 1999, the parties filed a notice of appeal to the district court challenging the commissioner's decision. After a hearing, the district court filed its order, finding that there was not enough evidence to conclude that appellant and petitioner had maltreated N.M.Z. The

court further found that there was not enough evidence to conclude that petitioner had maltreated C.M.Z.[1] But, the court did find that there was evidence to support a determination that appellant maltreated C.M.Z. Appellant now seeks review of that determination.

## ISSUES

I. What is the correct scope of review of maltreatment determinations reviewed under Minn.Stat. § 256.045 (2000)?

II. Did the commissioner err by upholding the county's determination that appellant maltreated her son pursuant to Minn.Stat. § 626.556 (2000)?

## ANALYSIS

### I.

■ Because neither party correctly identified the proper scope or standard of review of the commissioner's orders regarding maltreatment determinations, we take this opportunity to clarify this court's role in the process.

Review of the commissioner's orders relating to maltreatment determinations is governed by Minn.Stat. § 256.045 (2000). After considering the referee's recommendation, the commissioner issues a final order. *Id.*, subd. 3b. A party dissatisfied by the commissioner's decision may appeal to the district court. *Id.*, subd. 7. On review, the district court "shall take no new or additional evidence unless it determines that such evidence is necessary for a more equitable disposition of the appeal." *Id.*, subd. 8. A party dissatisfied with the district court's order "may appeal the order as in other civil cases." *Id.*, subd. 9.

■ The department asserts that maltreatment proceedings are not contested cases and thus are not governed by the

1. Because the district court determined that there was not enough evidence to conclude that petitioner maltreated either child, petitioner does not raise any issues on appeal. Although the department argues that the court's determination was erroneous, no notice of review was filed so the issue is not properly before this court. *See Smoliak v. Myhr,* 361 N.W.2d 153, 157 (Minn.App.1985) (stating failure to file notice of review limits issue on appeal to those in notice of appeal).

scope of review set forth in Minn.Stat. § 14.69 (2000) (the Administrative Procedure Act). In making this assertion, respondent relies on Minn.Stat. § 256.045, subd. 4(b), which states that hearings before the commissioner's referee "shall not be" contested cases. Although Minnesota case law has not specifically addressed this provision of the statute, case law consistently provides that when judicial review is authorized by Minn.Stat. § 256.045, the scope of review is governed by Minn.Stat. § 14.69. *Estate of Atkinson v. Minnesota Dep't. of Human Servs.,* 564 N.W.2d 209, 213 (Minn.1997); *Johnson v. Minnesota Dep't. of Human Servs.,* 565 N.W.2d 453, 457 (Minn.App.1997); *cf. Brunner v. State, Dep't. of Pub. Welfare,* 285 N.W.2d 74, 75 (Minn.1979) (recognizing that scope of review for review of orders authorized by Minn.Stat. § 256.045 is governed by Administrative Procedure Act). Because judicial review in this case was authorized by Minn.Stat. § 256.045, we conclude that the scope of review is governed by Minn. Stat. § 14.69.

■ Minnesota case law also provides that when judicial review is authorized under Minn.Stat. § 256.045, the district court is engaged in appellate review even though Minn.Stat. § 256.045, subd. 8, allows the district court to consider new and additional evidence when "necessary for a more equitable disposition of the appeal." *See Johnson,* 565 N.W.2d at 457 (stating "district courts engaged in appellate review of MA eligibility decisions") (quoting *In re Kindt,* 542 N.W.2d 391, 398 (Minn.App. 1996)). Accordingly, this court reviews the commissioner's order independently, giving no deference to the district court's review. *Atkinson,* 564 N.W.2d at 213; *Johnson,* 565 N.W.2d at 457; *Kindt,* 542 N.W.2d at 398.

Therefore, this court's role is to review the commissioner's decision to determine if the decision was:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69.

## II.

Appellant contends that the county did not follow the statutory investigative procedures pursuant to Minn.Stat. § 626.556 (2000), so the determination that she maltreated C.M.Z. should be reversed. Appellant asserts that the county failed to (1) maintain adequate records under Minn. Stat. § 626.556, subd. 10(a); (2) provide her the opportunity to make a statement before making its determination under Minn.Stat. § 626.556, subd. 10(h); (3) conduct a face-to-face interview with appellant under Minn.Stat. § 626.556, subd. 10(i); (4) record interviews with witnesses and collateral sources under Minn.Stat. § 626.556, subd. 10(j); and (5) give her proper notice of its maltreatment determination under Minn.Stat. § 626.556, subd. 10f. Because C.M.Z. is now 18, it seems that appellant is essentially seeking to reverse this determination so that her "good name" can be restored.

■ The commissioner's factual findings are reviewed under the substantial evidence test, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Department of Human Servs. v. Muriel Humphrey Residences,* 436 N.W.2d 110, 114 (Minn.App.1989), *review denied* (Minn. Apr. 26, 1989) (quotation omitted).

*Appropriate Records*

■ Relying on Minn.Stat. § 626.556, subd. 10(a), appellant asserts that the social worker, on behalf of the county, failed to maintain appropriate records of her interviews with C.M.Z. and the Wilsons, her

communication with the investigator, and her attempts to contact appellant for an interview.

The evidence does not support appellant's assertion. The record indicates that the social worker completed (1) the intake social service referral form generated the day the Wilsons first met with her, which documented their initial report regarding the November 30, 1997, incident along with prior allegations of abuse; (2) the social services referral, which documented the nature and description of the report that included C.M.Z's version of the November 30 incident; and (3) a personal narrative of the events surrounding the maltreatment determination, including contacts with the investigator and appellant. Although the dates given by the social worker on the narrative are not accurate, they were corrected during her hearing testimony.

The social worker used these documents in making her maltreatment determination, and the documents contain relevant information regarding the reports of alleged abuse, the family's history, and her attempts to speak with appellant. It is clear that the records were appropriately maintained.

*Relevant Information for Making Maltreatment Determination*

Appellant argues that the social worker, on behalf of the county, should have assessed the credibility of C.M.Z.'s statement under Minn.Stat. § 256.556, subd. 10(h)(1), and provided her with an opportunity to make a statement under Minn.Stat. § 256.556, subd. 10(h)(2).

■ The hearing testimony shows that the social worker did evaluate C .M.Z.'s credibility as suggested by Minn.Stat. § 626.556, subd. 10(h)(1). Further, even if the social worker had not made this determination, her inaction would not warrant reversal because she was not required to evaluate C.M.Z.'s credibility. *See* Minn. Stat. § 626.556, subd. 10(h) (stating that relevant information must be requested

when conducting an investigation, which *may* include assessing child's credibility).

■ Although Minn.Stat. § 626.556, subd. 10(h) provides a list of possible sources of relevant information, the list states that the agency *"must* provide the alleged offender with an opportunity to make a statement." Minn.Stat. § 626.556, subd. 10(h)(2) (emphasis added). Regardless of any inconsistencies in the statutory language about what the county "may" or "must" do, the hearing testimony demonstrates that the social worker set up an interview with appellant, but appellant's attorney canceled it. Based on these facts, the county did provide appellant an opportunity to make a statement, but she declined.

*Face–to–Face Interview with Alleged Offender*

■ Appellant argues that the county never conducted a face-to-face interview with her, which is required under Minn. Stat. § 626.556, subd. 10(i).

As stated above, the record demonstrates that the social worker did afford appellant the opportunity to meet with her. The social worker set up an appointment with appellant, but appellant's attorney canceled it. The social worker further testified that appellant's attorney informed her that all communication involving appellant must be channeled through appellant's attorney. This evidence demonstrates that the social worker attempted to conduct a face-to-face interview, but appellant chose to cancel the scheduled interview.

*Audio Recordings of Interviews*

■ Appellant asserts that the county failed to record its interviews with C.M.Z. or the Wilsons pursuant to Minn.Stat. § 626.556, subd. 10(j)(1).

The statute provides that audio recordings are to be made "whenever possible," but it does not specify a penalty if the county does not make the recordings. *Cf. Erickson v. Commissioner of the Dep't. of Human Servs.*, 494 N.W.2d 58, 62 (Minn.

App.1992) (stating appellant has burden of proving existence of statutory ground for reversal of agency's decision). Further, even though no recordings were made the record otherwise supports the commissioner's decision to uphold the county's maltreatment determination.

*Notice of the Maltreatment Determination*

 Appellant argues that, under Minn.Stat. § 626.556, subd. 10(f), the county was required to provide her with notice of its maltreatment determination.

While appellant asserts that the notification letter was only addressed to petitioner, thereby making notice to appellant defective, the social worker testified that the envelope in which the letter was mailed was addressed to both appellant and petitioner. The commissioner recognized where factual issues are contested, "the conclusions reached by the referee will necessarily be supported by one party and disputed by the other." It is within the referee's province to determine credibility and such decisions should not be reweighed. *Youa True Vang v. A–1 Maintenance Serv.*, 376 N.W.2d 479, 482 (Minn.App.1985).

Further, at the time the notice was sent, petitioner and appellant resided at the same address as husband and wife, appellant was involved in every step of the appeal process, and she was never denied a hearing. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (stating if notice is of nature that reasonably conveys required information and affords time to respond, "the constitutional requirements are satisfied"). Appellant does not allege any prejudice resulting from the purportedly defective notice. Thus, we conclude that the notice, even if defective, does not warrant reversal. *Cf. Risher v. Office of Workers Comp. Program*, 940 F.2d 327, 331 (8th Cir.1991) (concluding that where appellant suffered no injury from inadequate notice and prop-

erly and timely appealed, reversal not warranted despite inadequate notice).

### DECISION

Although the county did not record interviews, there is no statutory remedy for this failure, and the county complied with all other statutory investigative procedures challenged by appellant. Thus, there is substantial evidence to support the commissioner's decision upholding the county's determination under Minn.Stat. § 626 .556 (2000) that appellant maltreated her son.

**Affirmed.**