**In re APPEAL OF Sharon O'BOYLE.**

No. C1–02–601.

Court of Appeals of Minnesota.

Dec. 24, 2002.

Marlene S. Garvis, Jardine, Logan & O'Brien, PLLP, Lake Elmo, for appellant Sharon O'Boyle.

Mike Hatch, Attorney General, Theresa Meinholz–Gray, Assistant Attorney General, St. Paul, for respondent Commissioner, Minnesota Department of Human Services.

Douglas H. Johnson, Washington County Attorney, Nancy Nelson, Assistant Washington County Attorney, Stillwater, for respondent Washington County Community Services.

Considered and decided by SHUMAKER, Presiding Judge, and SCHUMACHER, Judge, and HUDSON, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

This is an appeal from a district court order affirming a decision of the Commissioner of the Minnesota Department of Human Services (DHS), which affirmed the Washington County Community Services' finding that appellant neglected her mother, a vulnerable adult. The DHS determined that appellant's mother was a vulnerable adult and that appellant, as her mother's caregiver, committed maltreatment through neglect by failing to obtain medical services for her mother's injuries.

Although substantial evidence supports the DHS's determinations that appellant's mother is a vulnerable adult and that the alleged omission prima facie fits the statutory definition of neglect, the DHS failed to make any factual findings as to whether or not appellant was a "caregiver" and failed to make any factual findings or draw any conclusions as to exceptions in the neglect statute for therapeutic conduct. Because such findings and conclusions are essential, the matter must be remanded. Accordingly, we reverse the ultimate conclusion of maltreatment; affirm the determinations that appellant's mother was a vulnerable adult and that appellant's omission prima facie fits the definition of "neglect"; and remand for further proceedings and determinations.

## FACTS

The DHS affirmed the Washington County Community Services' determination that appellant Sharon O'Boyle neglected Elsie O'Boyle, a vulnerable adult. The DHS determined that 78–year–old Elsie is a vulnerable adult who had been neglected on March 27 and 28, 2000, by Sharon, her adult daughter and caregiver. The district court affirmed the DHS's determinations.

The DHS found that Elsie lives with Sharon. In addition to some physical diseases, Elsie has early stage Alzheimer's disease and some mild dementia.

According to the DHS findings, Elsie slipped and fell outside her home on March 27, 2000, and suffered three broken bones in her foot and a head abrasion. Despite Elsie's complaint of pain, neither she nor Sharon contacted a physician. On March 28, 2000, Elsie's sister and another of Elsie's daughters visited Elsie and observed that Elsie had dried blood on her head, complained of foot pain, was in a weak condition, and was wearing filthy clothing. The sister and daughter took Elsie to a hospital emergency room.

The DHS found that the attending physician diagnosed Elsie "as suffering from elderly neglect"; noted that Elsie had a head abrasion, three broken bones in her foot, and bruises; and that she was malnourished and dehydrated. The physician concluded that Elsie was "not medically competent" and ordered a 72–hour hold. The DHS also found that Elsie's primary-care physician stated that Elsie "was not capable of making good decisions about her own care and that there was clear evidence of neglect."

In a hearing before a DHS referee, Sharon O'Boyle testified that she was not at home when Elsie fell but was talking on the telephone with her at that time. From Sharon's conversation, it did not appear that Elsie sustained a serious injury. Elsie testified that she did not complain of pain to Sharon until March 28 and that she was able to walk on that day. Sharon inspected Elsie's head abrasion and her ankle, but, concluding that Elsie's ankle was sprained, Sharon did not remove Elsie's sock. Sharon testified that neither she nor Elsie felt it necessary to call a doctor.

On appeal, Sharon O'Boyle challenges the DHS's finding of neglect and raises issues as to whether she was Elsie's "caregiver," whether her actions were "therapeutic conduct," and whether she made a "single mistake."

## ISSUE

Is a determination by the DHS that a caregiver has neglected a vulnerable adult, and therefore committed maltreatment, supported by substantial evidence when there are no factual findings showing that the person charged with neglect was a caregiver and there are neither factual

findings nor conclusions as to the applicability of exceptions in the neglect statute?

## ANALYSIS

■ Minn.Stat. § 256.045, subd. 7 (2000), governs all judicial review of the DHS commissioner's decisions. Our scope of review is governed by Minn.Stat. § 14.69 (2000). We need not give any deference to the district court's decision, so we independently review the commissioner's decision. *Zahler v. Minn. Dep't of Human Servs.*, 624 N.W.2d 297, 301 (Minn.App.2001). Under Minn.Stat. § 14.69, we can reverse the commissioner's decision if its decision is, among other things, "[u]nsupported by substantial evidence in view of the entire record as submitted." *Id.*

■ The supreme court has found that "decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn. 1977).

The commissioner's factual findings are reviewed under the substantial evidence test, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zahler*, 624 N.W.2d at 301 (quoting *Dep't of Human Servs. v. Muriel Humphrey Residences*, 436 N.W.2d 110, 114 (Minn. App.1989))), *review denied* (Minn. Apr. 26, 1989). Substantial evidence has also been defined as:

1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than 'some evidence'; 4) more than 'any evidence';

and 5) evidence considered in its entirety.

*Reserve Mining Co.*, 256 N.W.2d at 825.

■ A "vulnerable adult" is a person who has an infirmity or dysfunction that impairs the person's ability to care for herself without assistance and to protect herself from maltreatment. Minn.Stat. § 626.5572, subd. 21(4)(i)-(ii) (1998).[1] There is substantial evidence to support the DHS's findings that Elsie O'Boyle had physical and mental infirmities on March 27 and 28, 2000, of such a nature as to classify her as a vulnerable adult.

If a "caregiver" neglects a vulnerable adult, the caregiver ostensibly has committed "maltreatment" of the vulnerable adult. Minn.Stat. § 626.5572, subd. 15 (1998). A "caregiver" is

an individual or facility who has responsibility for the care of a vulnerable adult as a result of a family relationship, or who has assumed responsibility for all or a portion of the care of a vulnerable adult voluntarily, by contract, or by agreement.

Minn.Stat. § 626.5572, subd. 4 (1998). Sharon O'Boyle argues that she was not a "caregiver" on the relevant dates. The DHS concluded, without any factual findings, that Sharon was a caregiver for Elsie. There is no substantial evidence to support this conclusion.

■ A caregiver "neglects" a vulnerable adult by failing to provide care or services that are reasonable and necessary "to obtain or maintain the vulnerable adult's physical or mental health, or safety * * *." Minn.Stat. § 626.5572, subd. 17(a)(1) (1998). The DHS found that the failure to obtain medical attention for Elsie on March 27 and 28 constitutes neglect.

---

1. We recognize that Minn.Stat. § 626.5572 has been amended since 1998. But we must apply the 1998 statute to Sharon's case since her neglectful acts occurred on March 27 and 28, 2000, at which time the 1998 statute was in effect.

Considering the nature of Elsie's foot injury, which Elsie complained to Sharon about at least on March 28, the reasonable and necessary course of conduct would be to notify a physician. Even if the ankle might only have been sprained, at the very least a telephone call to a doctor would have been reasonable and necessary. The DHS's finding that there occurred neglect within the statutory definition is supported by substantial evidence.

If a caregiver's failure or omission to supply requisite care to a vulnerable adult is the "result of an accident or therapeutic conduct," the failure or omission is not neglect. Minn.Stat. § 626.5572, subd. 17(a)(2) (1998). "Therapeutic conduct" is a caregiver's good-faith provision of services in the vulnerable adult's interests. Minn. Stat. § 626.5572, subd. 20 (1998). Furthermore, there is no neglect under the statute if the sole basis for the alleged neglect is

> a single mistake in the provision of therapeutic conduct * * * which does not result in injury or harm which reasonably requires the care of a physician.

Minn.Stat. § 626.5572, subd. 17(c)(4)(i) (1998).

Sharon O'Boyle contends that even if she is found to have been Elsie's caregiver on March 27 and 28, she is entitled to the therapeutic-conduct exceptions to the "neglect" rules. The DHS did not make any findings on the statutory exceptions.

■ The vulnerable-adult-neglect statute applies to the conduct of "caregivers." Minn.Stat. § 626.5572, subd. 17. It follows that before there can be a proper determination that maltreatment has occurred, there must be threshold factual findings that reasonably support a conclusion that the person charged with maltreatment was a caregiver. The DHS erred in failing to make any findings as to whether or not Sharon O'Boyle was Elsie's caregiver on March 27 and 28, 2000.

■ If a caregiver ostensibly "neglects" a vulnerable adult, there is no statutory neglect, and hence no maltreatment, if a therapeutic-conduct exception applies. Because Sharon O'Boyle raised the issue of therapeutic-conduct exceptions, the DHS was obligated to make findings and draw conclusions as to the applicability of the alleged exceptions. The DHS erred by failing to do so.

Because the DHS failed to make essential findings and to draw essential conclusions, we remand for further evidentiary proceedings. On remand, the DHS need not again address the issues of whether Elsie O'Boyle was a vulnerable adult and whether Sharon's conduct on the two days at issue was prima facie "neglect" as defined in Minn.Stat. § 626.5572, subd. 17(a)(1), because those determinations are supported by substantial evidence.

Finally, the allegations of maltreatment pertain to alleged failures and omissions on March 27 and March 28, 2000. It is for only those two days that findings and conclusions should be made on the dispositive issue of neglect. It is appropriate, however, to consider background and historical facts that are reasonably relevant to the DHS's determinations.

**Affirmed in part, reversed in part, and remanded.**