*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1585**

In re the Matter of:

Chad Thompson,
Appellant,

vs.

the Commissioner of Douglas County Human Services,
Respondent,

Minnesota Department of Human Services,
Respondent.

**Filed June 17, 2024
Affirmed
Cochran, Judge**

Douglas County District Court
File No. 21-CV-23-541

Chad Thompson, Moose Lake, Minnesota (pro se appellant)

Chad M. Larson, Douglas County Attorney, Alexandria, Minnesota (for respondent county)

Keith Ellison, Attorney General, Leonard J. Schweich, Assistant Attorney General, St. Paul, Minnesota (for respondent department)

        Considered and decided by Cochran, Presiding Judge; Ede, Judge; and Smith, John,

Judge.\*

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**COCHRAN**, Judge

Appellant Chad Thompson challenges a district court order affirming respondent Minnesota Department of Human Services' decision disqualifying him from participation in Minnesota's General Assistance Program for two years. Thompson asks us to reverse, arguing that the agency's decision is not supported by substantial evidence. Because we conclude that substantial evidence supports the challenged decision, we affirm.

## FACTS

Thompson is a resident of the Minnesota Sex Offender Program (MSOP) facility in Moose Lake. Thompson started receiving General Assistance benefits in August 2009. The January 2023 disqualification decision at issue involves Thompson's second disqualification from the General Assistance Program.

Thompson was previously disqualified from the program for a period of one year starting on July 1, 2020. On July 2, 2021, the day after his disqualification period ended, Thompson reapplied for General Assistance benefits through respondent Douglas County Social Services (the county).[1] The application form instructed Thompson to "report any changes that may affect" his benefits within ten days of the change and informed him that

---

[1] We note that the title of this opinion refers to this respondent as the "the Commissioner of Douglas County Human Services." The correct name of this respondent is Douglas County Social Services, which we refer to as "the county" in this opinion.

he was under a duty to "report all" of his income and assets.[2] Thompson started receiving monthly General Assistance checks again in August 2021.

In January 2022, Thompson completed a "Household Update Form," which the county used to determine whether Thompson continued to be eligible for General Assistance benefits. On the form, Thompson checked boxes indicating that he (1) had no assets, (2) was not employed or expecting to start working within 30 days, and (3) was not receiving or expecting to receive money from sources other than work such as "public assistance" or "any other payments." The form included a declaration, signed by Thompson, stating that "all parts of this form are true and correct statements, to the best of my knowledge." Thompson also received a form outlining his responsibilities and rights, which included language reminding him that he was responsible for reporting any changes in his income.

Months later, a Minnesota Department of Human Services (DHS) investigator at the MSOP-Moose Lake facility notified the county that Thompson was drawing his full allotment of General Assistance benefits while working for pay at MSOP—a potential program violation. The DHS investigator provided the county with Thompson's MSOP account statement. The county determined that Thompson had failed to report the following sources of income: five paychecks from June 2022 through August 2022 and several money orders received between October 2021 and July 2022. Based on the

_____

[2] Applicants for General Assistance benefits must apply through their county of residence. Minn. R. 9500.1213, subp. 1 (2021). In turn, the county must determine the applicant's eligibility within 30 days of receiving the application. *Id.*, subp. 7 (2021).

3

unreported income, the county investigator calculated that Thompson had been overpaid $598.38 in General Assistance benefits.

As a result of the investigation, the county sent Thompson two notices. The first notice instructed Thompson to repay the $598.38. The second notice, entitled "Notice of Intentional Program Violation," proposed to disqualify Thompson from the General Assistance Program for a period of two years for failing to accurately report his income. The county also scheduled a hearing before a human-services judge (HSJ) with the DHS appeals office to address the proposed disqualification.

At the disqualification hearing, the county's representative testified that Thompson should be disqualified due to his intentional failure to report his income. The representative testified that Thompson's MSOP account received monthly money-order deposits between October 2021 and July 2022. The representative noted that, despite those payments, Thompson affirmed that "he hadn't received any other payment" on his Household Update Form that the county received on February 7, 2022. The representative also testified that Thompson started working and receiving paychecks in June 2022, but failed to report his change in employment status to the county. The representative added that Thompson had received General Assistance benefits since 2009 and argued that Thompson "would know the program requirements where he was constantly advised that he had to report income."

Thompson testified about the money orders and his employment status. Regarding the money orders, he stated that he was not aware that he was required to report the money orders as income and that his error was "unintentional." Regarding his unreported paychecks, Thompson testified that he did not inform the county of his change in

4

employment within ten days of the change as required because he was waiting for the county to send him a "fresh copy" of the Household Update Form to submit. Thompson claimed that he "had all [his] paystubs already lined up ready to send" and was merely waiting to be contacted by the county. Thompson ultimately admitted it was "[his] error" for not submitting the change in employment information within ten days.

In a written order, the HSJ determined that there was clear and convincing evidence that Thompson committed an intentional program violation. The HSJ emphasized that Thompson failed to report his income when he submitted the update form in February 2022, despite being on notice of the penalties for a fraud violation. The HSJ found Thompson's testimony that he did not know that he needed to report the money orders to be not credible, "particularly considering that [Thompson] had been a recipient of General Assistance benefits for some time and was previously disqualified for an intentional program violation." The HSJ recommended granting the county's request to disqualify Thompson from receiving benefits for two years because this was Thompson's second intentional violation of program rules. On behalf of the DHS commissioner, the co-chief HSJ adopted the HSJ's findings of fact, conclusions of law, and recommended order as the final decision of DHS.

Thompson appealed to the district court for judicial review of DHS's final decision. The district court denied Thompson's appeal and affirmed DHS's order. This appeal follows.

5

**DECISION**

Minnesota's General Assistance Program provides "cash payments to persons unable to provide themselves with a reasonable subsistence compatible with decency and health and who are not otherwise provided for under the laws of this state or the United States." Minn. Stat. § 256D.02, subd. 4 (2022). Any person who attempts to obtain "assistance to which the person is not entitled" through "a willfully false statement or representation, or by the intentional withholding or concealment of a material fact, . . . or other fraudulent device" is subject to the penalties provided in Minnesota Statutes section 256.98 (2022 & Supp. 2023). Minn. Stat. § 256D.14 (2022). Under section 256.98, any person found to have wrongfully obtained assistance by "an administrative hearing determination" must be disqualified from the assistance program. Minn. Stat. § 256.98, subd. 8.[3] First-time offenders are disqualified from the program for one year, second-time offenders are disqualified for two years, and third-time offenders are disqualified permanently. *Id.*

A party aggrieved by an order of DHS disqualifying the party from receiving General Assistance benefits may appeal that order to district court. Minn. Stat. § 256.045, subd. 7 (2022). On subsequent appeal to this court, we independently review the agency's

---

[3] Thompson devotes much of his brief to discussing the required showing for a criminal conviction of theft for wrongfully obtaining assistance under Minnesota Statutes section 256.98, subdivision 1. Thompson argues that the DHS decision does not address the knowledge or intent elements of such an offense, and that there was insufficient evidence to convict. Given that this appeal concerns an administrative proceeding, not a criminal conviction, we find no basis for reversal in Thompson's arguments premised on criminal caselaw.

6

decision without deferring to the district court's ruling. *Johnson v. Minn. Dep't of Hum. Servs.*, 565 N.W.2d 453, 457 (Minn. App. 1997). Our review of a DHS decision issued under Minnesota Statutes section 256.045 (2022 & Supp. 2023) is governed by Minnesota Statutes section 14.69 (2022). *Zahler v. Minn. Dep't of Hum. Servs.*, 624 N.W.2d 297, 301 (Minn. App. 2001), *rev. denied* (Minn. June 19, 2001). Under section 14.69, this court may affirm the decision, remand for further proceedings, or reverse or modify the decision "if the substantial rights of the petitioner[] may have been prejudiced because," among other reasons, the decision was "unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 14.69(e).

"Administrative agency decisions enjoy a presumption of correctness." *In re Appeal by RS Eden/Eden House*, 928 N.W.2d 326, 332 (Minn. 2019) (quotation omitted). The party challenging an agency decision bears the burden of proving that the decision "was reached improperly." *Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 196 (Minn. App. 2010) (quotation omitted).

Thompson argues that DHS's decision to disqualify him from the General Assistance Program for two years is not supported by substantial evidence and therefore should be reversed or modified.[4] "[S]ubstantial evidence is relevant evidence that a

---

[4] Thompson also asserts that the "overpayment amount must be set aside." The scope of this appeal is limited to DHS's final decision, which concerned whether Thompson should be disqualified from the General Assistance Program. From the record, it is not clear whether Thompson requested a hearing on or appealed the county's overpayment determination. Thus, the issue of whether Thompson is obligated to repay benefits he was not entitled to receive is not properly before this court on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (observing that appellate courts generally will not review matters not presented to and considered by the district court); *see also In re A.D.*,

reasonable mind might accept as adequate to support a conclusion, and more than a scintilla, some, or any evidence." *In re NorthMet Project Permit to Mine Application*, 959 N.W.2d 731, 749 (Minn. 2021) (quotations omitted). To determine whether an agency decision is supported by substantial evidence, we must "determine whether the agency has adequately explained how it derived its conclusion and whether that conclusion is reasonable on the basis of the record." *Id.* (quotation omitted).

Thompson contends that there is no evidence in the record to support DHS's determination that he committed an intentional program violation by failing to report income. An intentional program violation occurs when an applicant has intentionally "[m]ade a false or misleading statement, or misrepresented, concealed or withheld facts." 7 C.F.R. § 273.16(c)(1) (2024); *see also* Minn. Stat. § 256.046, subd. 1 (Supp. 2023) (providing that General Assistance benefits disqualification hearings are subject to the requirements of 7 C.F.R. § 273.16 (2024)). We conclude that substantial evidence supports DHS's determination that Thompson committed an intentional program violation when he failed to report certain income for the following four reasons.

First, the record reflects that Thompson misrepresented his income on the Household Update Form that he completed in January 2022. The form instructed Thompson to report any money received from a broad array of sources, including a catchall category of "any other payments." As of January 1, 2022, Thompson had received three $50 money orders, which were deposited in his MSOP account. Yet, on the Household

---

883 N.W.2d 251, 261 (Minn. 2016) (discussing this aspect of *Thiele* in certiorari review of an agency decision).

Update Form that Thompson completed in January 2022, Thompson stated that he did not "get money . . . from sources other than work." At the hearing before the HSJ, Thompson testified that his failure to report the income was unintentional, but the HSJ did not find this testimony credible. We defer to an agency's "conclusions regarding conflicts in testimony" and "the inferences to be drawn from testimony." *Cannon*, 783 N.W.2d at 189 (quoting *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278 (Minn. 2001)). Therefore, the record demonstrates that Thompson intentionally failed to report income from three money orders on the Household Update Form.

Second, Thompson failed to update his income information during subsequent months. After Thompson completed his Household Update Form in January 2022, he continued to receive monthly money orders and, in June 2022, he started receiving paychecks. The Household Update Form explicitly instructed Thompson to "report any changes that may affect [his] benefits to [his] county . . . within 10 days after the change has occurred." The form instructed Thompson that he "may be required to report" employment changes, and that he "must" report all his income and assets. Yet, the record reflects that he failed to do so.

Third, Thompson admitted that he failed to report both the money orders and paychecks to the county. At the hearing, Thompson stated, "[M]y error was not understanding the putting the money orders on that piece of paper. That was my error." He also said:

> I was waiting on Douglas County to send me a household
> report form, to put all my deposit slips in there and mark on

9

there, yes, I have a job and this is all my stuff.  And that would
have been my error of not doing that within 10 days.

By his own admissions, Thompson did not comply with program requirements.

Fourth, the record reflects that Thompson had been receiving General Assistance benefits since 2009 and had been disqualified from the program on a prior occasion.  These facts suggest that Thompson was familiar with the program and knew or should have known of his obligations to report income changes and the consequences for failing to do so.

In sum, DHS adequately explained its determination that Thompson committed an intentional program violation by failing to report his income to the county.  And based on our independent review of the record, we conclude that there is substantial evidence in support of DHS's determination.  Accordingly, Thompson has not met his burden of showing that DHS's decision was improper.

**Affirmed.**