**In re the ESTATE OF Francis E. BARG, a/k/a Francis Edward Barg.**

No. A05–2346.

Supreme Court of Minnesota.

May 30, 2008.

Rehearing Denied July 21, 2008.

Janice S. Kolb, Mille Lacs County Attorney, Melissa M. Saterbak, Asst. Mille Lacs County Attorney, Milaca, MN, for appellant Mille Lacs County.

Thomas J. Meinz, Princeton, MN, for respondent Michael Barg.

Julian J. Zweber, St. Paul, MN, for amici curiae Elder Law Section of the Minnesota State Bar Association and National Senior Citizens Law Center.

Lori Swanson, Attorney General, Robin Christopher Vue–Benson, Asst. Attorney General, St. Paul, MN, for amicus curiae Minnesota Commissioner of Human Services.

## OPINION

MEYER, Justice.

The Mille Lacs County Family Services and Welfare Department (County) filed a claim against the Estate of Francis E. Barg (Estate), seeking to recover Medicaid benefits correctly paid on behalf of his predeceased wife, Dolores Barg. The Estate partially allowed the claim, and disallowed the other part. The district court, concluding that Dolores Barg's interest in the couple's property was limited because she had conveyed it to her husband before her death, evaluated her interest as a life estate, and upheld the partial disallowance. The County appealed, arguing that it was entitled to recovery from the full value of the property. The court of appeals reversed and remanded, partially allowing the claim and evaluating Dolores Barg's interest in the property as a joint tenancy interest equivalent to one-half the value of the property. *In re Estate of Barg*, 722

N.W.2d 492, 497 (Minn.App.2006). We affirm in part and reverse in part.

*Factual and Procedural Background.*

The parties have stipulated to the facts in this case. Dolores J. Barg was born in 1926, married Francis E. Barg in 1948, and remained married to him until her death in 2004. In 1962 and 1967, in two separate transactions, the Bargs took title as joint tenants to real property in Princeton, Minnesota. Their home was located on this property. On October 24, 2001, Dolores Barg entered a nursing home in Mille Lacs County, at first paying the costs herself. In December 2001, she applied for long-term Medicaid benefits.[1]

An asset assessment for Dolores Barg was completed in February 2002. The Bargs' marital assets including their homestead totaled $137,272.63.[2] Approval for long-term Medicaid benefits was given retroactive to December 1, 2001.

On February 27, 2002, Francis Barg executed his will, nominating the couple's son Michael F. Barg as personal representative, leaving his estate to his surviving descendants, and making no provision for his wife. Dolores Barg transferred her joint tenancy interest in the homestead property to Francis Barg on July 2, 2002, when her daughter and guardian of her estate, Barbara Anderson, executed a Guardian's Deed. Also in July 2002, Barbara Anderson deleted Dolores Barg's name from certificates of deposit the couple held jointly at Bremer Bank. There is no allegation that these actions were improper or fraudulent.

On January 1, 2004, Dolores Barg died, having received $108,413.53 in Medicaid benefits. At the time of her death, assets belonging to either Dolores or Francis Barg included three certificates of deposit, a checking account, and an IRA account, all in the name of Francis Barg alone; one certificate of deposit payable to the funeral home for Dolores Barg's funeral; two vehicles, together worth approximately $9,000; the homestead titled in Francis Barg's name, valued at $120,800; and miscellaneous household goods and furniture. All of these assets had been jointly held at some time during the couple's 55-year marriage.

On May 27, 2004, Francis Barg died, never having received Medicaid benefits. On July 30, 2004, the County filed a claim against Francis Barg's estate, seeking to recover $108,413.53, the full amount Dolores Barg had received in Medicaid benefits.

Michael Barg disallowed $44,533.53 of the claim, and allowed $63,880. The County petitioned for an allowance of the full claim, arguing that the entire value of the marital property, both the homestead and the certificates of deposit, was subject to its claim because Dolores Barg's joint tenancy interest gave her a right to use of the entire property. The district court concluded that Dolores Barg's interest in the property at the time of her death was

1. "Medicaid" is the popular name for this cooperative federal-state program. *See* 42 U.S.C. § 1396–1396v (2000). In Minnesota it is referred to as "medical assistance." Minn. Stat. § 256B.02, subd. 8 (2006).

2. For purposes of determining eligibility of one spouse for Medicaid, the value of a couple's home is excluded. 42 U.S.C. § 1396r–5(c)(2), (5) (2000); 42 U.S.C. § 1382b(a)(1)(2000). In the asset assessment

for Dolores Barg, $104,875 was excluded. This amount corresponds to the value of the home, one jointly-owned vehicle, and a burial lot. When completing the asset assessment, a portion of the couple's resources is reserved for the needs of the spouse not applying for Medicaid. 42 U.S.C. § 1396r–5(c)(2), (f)(2)(A) (2000). Protected assets for the non-recipient spouse, Francis Barg, were calculated to be $24,607.

equivalent to a life estate, and upheld the partial disallowance.

The County appealed. The court of appeals explained that, based on *In re Estate of Gullberg*, 652 N.W.2d 709 (Minn.App. 2002), the County's ability to recover against Francis Barg's estate was limited to Dolores's interest in marital or jointly owned property at the time of her death. *Barg*, 722 N.W.2d at 496. The court decided that property law principles should be applied to determine the nature of that interest and that under federal law and *Gullberg*, Dolores Barg retained a joint tenancy interest in the homestead at the time of her death. *Id.* at 497. The court valued that interest as an undivided one-half of the property's value, and remanded the case to the district court for a recalculation of the amount of the claim that was allowable. *Id.*

The County petitioned for review. The Estate opposed review but sought conditional cross-review on the issue of whether federal law permits the State to recover at all from a surviving spouse's estate. We granted review, as well as cross-review, and asked for briefing on whether the Estate had adequately preserved for review the issue of "whether the county may recover Medicaid benefits correctly paid on behalf of a predeceased spouse from the estate of a surviving spouse." We granted requests by the Minnesota Commissioner of Human Services to file an amicus curiae brief aligned with the County and to participate in oral argument.[3] We also granted requests by the Elder Law Section of the Minnesota State Bar Association and the National Senior Citizens Law Center to file an amicus curiae brief aligned with the Estate. After oral argument, we asked the parties for supplementary briefing on the relationship of the 2003 and 2005 amendments of Minn.Stat. § 256B.15, subds. 1 and 1c–1k (2006), to the authority the County argues exists under Minn.Stat. § 256B.15, subd. 1a (2006) and Minn.Stat. § 256B.15, subd. 2 (2006), and how that relationship affects preemption analysis and the scope of recovery permissible under Minnesota law.

*Statutory Framework.*

Congress enacted Medicaid in 1965 as Title XIX of the Social Security Act to ensure medical care to individuals who do not have the resources to cover essential medical services. *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 9 (Minn. 2002). Medicaid was intended to be the payor of last resort. *Id.* The program is jointly funded with the states as a "cooperative endeavor in which the Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons." *Harris v. McRae*, 448 U.S. 297, 308, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). Participating states enact legislation and rules, incorporate them into state medical assistance plans, and submit those plans to the U.S. Secretary of Health and Human Services for approval. 42 U.S.C. § 1396a(a)-(b) (2000 & Supp. III 2003). After this, the states can receive federal payments. 42 U.S.C. § 1396 (2000). Each state administers its own program within the federal requirements, and the Centers for Medicare and Medicaid Services (CMS)[4] ad-

---

**3.** The Commissioner's motion to supplement the record on review is granted as to the following documents: North Dakota Medicaid State Plan, Transmittal No. 95–016; Indiana Medicaid State Plan, Transmittal No. 05–012; Idaho Medicaid State Plan, Transmittal No. 01–006; and Minnesota Medicaid State Plan, Transmittal No. 06–10. The motion is denied as to the e-mail correspondence dated November 4, 1999.

**4.** Formerly the Health Care Financing Administration (HCFA). *See Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S.

minister the program and approve state plans. *Martin,* 642 N.W.2d at 9. One of the requirements imposed on state plans is that they must "comply with the provisions of [42 U.S.C. § 1396p] with respect to liens, adjustments and recoveries of medical assistance correctly paid, transfers of assets, and treatment of certain trusts." 42 U.S.C. § 1396a(a)(18) (2000).

■■■ To receive Medicaid, a person must qualify as either "categorically" or "medically" needy. *Estate of Atkinson v. Minn. Dep't of Human Servs.,* 564 N.W.2d 209, 210–11 (Minn.1997). A person is "categorically needy" if he is eligible for other specified federal assistance programs. *Id.* at 211. A person is "medically needy" if he incurs medical expenses that reduce his income to roughly the level of those who are categorically needy. *Id.* To qualify as medically needy a person may have income no higher than a defined threshold and may own assets of no more than a defined value. *Id.* If the assets of a Medicaid applicant and her spouse exceed the qualifying threshold, they must "spend down" their assets until they are at or below the qualifying threshold. *Id.* If a potential Medicaid recipient transfers assets below fair market value within a certain period of time before eligibility, the recipient is deemed ineligible for benefits for a time period mandated by statute. 42 U.S.C. § 1396p(c) (2000). This provision prevents people who are not needy from becoming eligible for Medicaid by transferring their assets away.

■■■ When determining the eligibility of a married person to receive Medicaid, states consider assets of both husband and wife as available to the spouse requesting benefits. 42 U.S.C. § 1396r–5(c) (2000). But there are several provisions in place to protect the community spouse [5] from being impoverished as a result of the spend-down of assets needed to qualify the applicant for Medicaid. *See Atkinson,* 564 N.W.2d at 211; 42 U.S.C. § 1396r–5 (2000). The value of the couple's home is not included among assets considered eligible to pay for medical care. *Id.* § 1396r–5(c)(5); 42 U.S.C. § 1382b(a)(1) (2000). The community spouse of a Medicaid recipient is also entitled to an allowance of income and assets designated for his or her needs that is not considered available to pay for the recipient spouse's medical care. 42 U.S.C. § 1396r–5(d). Furthermore, the recipient spouse has the right to transfer assets, including an interest in the homestead, to his or her community spouse. 42 U.S.C. § 1396p(c)(2). Medicaid thus balances the obligation of community spouses to contribute to the payment of medical expenses for their recipient spouses against the accommodation of the community spouse's need to provide for his or her own support.

*Federal Medicaid Recovery Provisions.*

Although it is not applicable to the facts before us, it is useful to start with the pre–1993 federal law on Medicaid recovery, because it is relied on in the parties' arguments and is the basis for the rationale of several relevant cases. Prior to amendments adopted in the Omnibus Budget Reconciliation Act (OBRA) of 1993, the federal Medicaid statute stated a general principle that there should be no recovery of correctly paid Medicaid benefits, subject

473, 479 n. 1, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002).

**5.** Throughout this opinion, our discussion of spouses is premised on circumstances similar to those of the Bargs. One spouse, who we refer to as the recipient spouse, applies for and receives Medicaid benefits. The other, who we refer to as the community or surviving spouse, receives no Medicaid benefits and survives the recipient spouse.

to several exceptions, one of which is relevant here:

> No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except—
>
> \* \* \* \*
>
> (B) in the case of any other individual who was 65 years of age or older when he received such assistance, from his estate.

42 U.S.C. § 1396p(b)(1) (1988). Under this pre–1993 law, states were allowed, but not required, to recover Medicaid benefits paid to recipients 65 or older, and the statute specified the recovery would be from the recipient's estate. The statute also provided that this recovery from the recipient's estate could only be made after the death of the recipient's surviving spouse. *Id.* § 1396p(b)(2) (1988). Despite this prohibition against recovery before the death of a surviving spouse, there was no express mention of recovery from the estate of a surviving spouse. The pre–1993 federal law contained no definition of "estate."

Section 1396p(b) was amended as part of the OBRA amendments of 1993. Omnibus Budget Reconciliation Act of 1993, Pub.L. No. 103–66, § 13612(a), (c), 107 Stat. 312, 627–28 (codified as amended at 42 U.S.C. § 1396p(b)(1), (4) (2000)). As amended, the federal law retained the general prohibition against states attempting to recover Medicaid payments correctly paid on behalf of an individual, with limited exceptions. 42 U.S.C. § 1396p(b) (2000). But the 1993 amendments changed section 1396p(b) in several ways. First, they lowered the age criterion for recovery from 65 to 55. Second, they made recovery allowed by the exceptions mandatory rather than permissive. Third, they added a definition of "estate," which itself had both mandatory and permissive elements. As

amended, the general nonrecovery rule and the relevant exception read as follows:

> (1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in the case of the following individuals:
>
> \* \* \* \*
>
> (B) In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual's estate \* \* \*.

*Id.* The amended version of section 1396p(b)(1)(B) retained the express reference to recovery from the recipient's estate. Furthermore, as was true pre-amendment, this recovery from the recipient's estate is only permitted after the death of the recipient's surviving spouse: "Any adjustment or recovery under paragraph (1) may be made only *after* the death of the individual's surviving spouse, if any \* \* \*." 42 U.S.C. § 1396p(b)(2) (emphasis added). And like the pre–1993 version, the amended federal statute contains no express authorization for, or reference to, recovery from a surviving spouse's estate.

The 1993 amendments added a definition of "estate" for purposes of Medicaid recovery, with a mandatory provision that looks to state probate law and an optional provision that authorizes states to expand the definition beyond the scope of probate law:

> [T]he term "estate", with respect to a deceased individual—
>
> (A) shall include all real and personal property and other assets included within the individual's estate, as de-

fined for purposes of State probate law; and

(B) may include, at the option of the State * * * any other real and personal property and other assets in which the individual had any legal title or interest *at the time of death* (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

42 U.S.C. § 1396p(b)(4) (emphasis added). Under this provision, a state has the option to adopt a definition of "estate" for Medicaid recovery purposes that includes some assets which, under ordinary probate law, would not be part of the Medicaid recipient's estate, because they would pass immediately to someone else on the recipient's death. For example, when two persons hold property in joint tenancy with a right of survivorship and one dies, the deceased joint tenant's interest ordinarily passes directly to the surviving joint tenant and is not part of the probate estate. Under the optional expanded definition allowed by federal law, for Medicaid recovery purposes the interest of a deceased joint tenant who had received Medicaid would be included in his estate, rather than passing directly to the surviving joint tenant.

*Minnesota's Medicaid Recovery Laws.*

Minnesota has long had a policy of requiring participants in the Medicaid program and their spouses to use their own assets to pay their share of the cost of care during or after enrollment. Minn.Stat. § 256B.15, subd. 1(a) (2006). To implement this policy, since 1987 Minnesota law has provided for recovery of Medicaid benefits paid from the estate of a recipient or the estate of the recipient's surviving spouse. Minn.Stat. § 256B.15, subd. 1a

(originally enacted as Act of June 12, 1987, ch. 403, art. 2, § 82, 1987 Minn. Laws 3255, 3347). As relevant here, subdivision 1a provides that, "on the death of the survivor of a married couple, either or both of whom received medical assistance, * * * the total amount paid for medical assistance rendered for the person and spouse shall be filed as a claim against the estate of the [recipient] *or the estate of the surviving spouse.*" *Id.* (emphasis added). A claim against the estate of a surviving spouse for medical assistance provided to the recipient spouse may be made up to "the value of the assets of the estate that were marital property or jointly owned property *at any time during the marriage.*" *Id.*, subd. 2 (emphasis added).

The broad estate recovery authority contained in subdivisions 1a and 2 was supplemented in 2003 by amendments to the statute expanding subdivision 1 and adding subdivisions 1c–1k. Act of June 5, 2003, ch. 14, art. 12, §§ 40–50, 2003 Minn. Laws 1st Spec. Sess. 1751, 2205–17. These amendments implement the optional expanded definition of "estate" authorized in the 1993 amendments to the federal law. *See* Minn.Stat. § 256B.15, subd. 1(a)(2) (2006); 42 U.S.C. § 1396p(b)(4)(B). The 2003 amendments to the Minnesota estate recovery law modify common law to provide for continuation of a recipient's life estate or joint tenancy interest in real property after his death for the purpose of recovering medical assistance, Minn.Stat. § 256B.15, subd. 1(a)(3) (2006), and include that continued interest in the recipient's estate. Minn.Stat. § 256B.15, subds. 1g, 1h(b), 1i(a), 1j. The 2003 amendments also establish specific procedures for exercising claims against these continued life estate and joint tenancy interests, as well as procedures and waiting periods that differ according to whether the recipient's spouse, dependent children, or other rela-

tives living in the homestead survive the recipient. Act of June 5, 2003, ch. 14, art. 12, §§ 48–49, 2003 Minn. Laws 1st Spec. Sess. 1751, 2213–17 (codified as amended at Minn.Stat. § 256B.15, subds. 1i and 1j). In this case, the County filed its claim under subdivisions 1a and 2 and did not rely on provisions added in the 2003 amendments.

The issues presented in this case involve several questions about the relationship between the recovery provisions of federal and Minnesota Medicaid law. The court of appeals held that a partial disallowance of the County's claim was proper, relying on its earlier decision in *Gullberg* that the broad authorization in subdivision 2 for recovery up to the value of all assets of the estate that were marital property or jointly owned *at any time during the marriage* was partially preempted by the 1993 amendments to the federal law that limit the expanded estate to assets in which the recipient spouse had a legal interest *at the time of her death. Barg*, 722 N.W.2d at 595–96 (citing *Gullberg*, 652 N.W.2d at 714).

The County, and its supporting amicus curiae the Commissioner of the Department of Human Services, argue that the court of appeals was wrong, both here and in *Gullberg*, in finding any preemption of the broad estate recovery authorized in subdivisions 1a and 2. They contend that there was nothing in the federal statute prior to the 1993 amendments that limited the states' authority to pursue estate recovery of Medicaid benefits paid, and that the 1993 amendments were intended by Congress to expand state options, not limit them. Alternatively, the County argues that even if recovery is limited to the assets in which the recipient had an interest at the time of her death, Dolores Barg had an interest in the property notwithstanding the conveyance to her husband, and the court of appeals erred in valuing that interest as only one-half the value of the homestead.

■ The Estate and its supporting amici curiae counter that federal law authorizes recovery only from a recipient's estate, and Minnesota law that allows recovery from a surviving spouse's estate is therefore preempted.[6] The Estate argues that recovery is also barred because, to the extent recovery is allowed from the estate of a surviving spouse, federal law limits that recovery to the value of assets in which the recipient had a legal interest at the time of her death, and subdivision 2 of section 256B.15 is preempted to the extent it allows broader recovery. Finally, the Estate argues that there should be no recovery here because Dolores Barg had no legal inter-

---

6. The Estate sought cross-review on this issue of "whether the county may recover Medicaid benefits correctly paid on behalf of a predeceased spouse from the estate of a surviving spouse." We requested briefing on whether that issue had been adequately preserved for review. The County argues that the Estate failed to preserve the issue because it only partially disallowed the County's claim, it confirmed before the district court that only the disallowed portion of the claim was contested, and it asked the court of appeals to affirm the district court's decision. The County's arguments go to the scope of the remedy available in this case, an issue that we address infra. But this issue also has a legal aspect independent of the specific scope of recovery available in this case. That legal component is necessary to a thorough analysis of the preemption issues presented here, and we will therefore address the issue in that context. No new or controverted facts are needed in order to address this purely legal question, and no prejudice will result from our consideration of the issue because the parties addressed the issue in their briefs to the district court, the court of appeals, and this court. *See Watson v. United Servs. Auto. Ass'n*, 566 N.W.2d 683, 687–88 (Minn.1997).

est in the homestead or the certificates of deposit at the time of her death, having conveyed her interest to her husband during her lifetime.

Thus, the issues presented are as follows. First, does federal law preempt the authorization in Minn.Stat. § 256B.15, subd. 1a, for recovery of Medicaid benefits paid for a recipient spouse from the estate of the surviving spouse? Second, if such recovery from a surviving spouse's estate is not preempted, does federal law limit the recovery to assets in which the recipient had an interest at the time of her death, preempting the broader recovery allowed in Minn.Stat. § 256B.15, subd. 2, as to assets owned as marital property or in joint tenancy at any time during the marriage? Third, if recovery is limited to assets in which the recipient had an interest at the time of her death what, if any, interest did Dolores Barg have in the homestead or the certificates of deposit at the time of her death, and specifically, was the court of appeals correct in holding that Dolores Barg had a joint tenancy interest for purposes of estate recovery even though she transferred that interest to her husband during her lifetime? We address these issues in turn, after first reviewing basic preemption principles.

## I.

■ Whether federal law preempts state law is primarily an issue of statutory interpretation, which we review de novo. *Martin,* 642 N.W.2d at 9. The application of law to stipulated facts is a question of law, which we also review de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue,* 488 N.W.2d 254, 257 (Minn.1992).

■ Congressional purpose is "'the ultimate touchstone'" of the preemption inquiry. *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978) (quoting *Retail Clerks*

*Int'l Ass'n, Local 1625 v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)). Our primary focus in the analysis must be to ascertain the intent of Congress. *See Cal. Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 280–81, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). The United States Supreme Court has explained that "[c]onsideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Thus, preemption is generally disfavored. *Martin,* 642 N.W.2d at 11 (citing *Cipollone,* 505 U.S. at 516, 518, 112 S.Ct. 2608).

■ Congress may preempt state law in several ways. *Cal. Fed. Sav. & Loan Ass'n,* 479 U.S. at 280, 107 S.Ct. 683. First, it may do so with express language preempting state law. *Id.* Second, it may do so by fully occupying the field, that is, "congressional intent to pre-empt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Id.* at 280–81, 107 S.Ct. 683 (quoting *Rice,* 331 U.S. at 230, 67 S.Ct. 1146). Here, it is clear that Congress neither expressly preempted state law nor so completely occupied the field as to leave no room for state action, because the Medicaid program specifically permits and even requires action by participating states. *Martin,* 642 N.W.2d at 11.

■ The third kind of preemption is at issue in this case. Even when Con-

gress has not chosen to displace state law expressly or by fully occupying the field, "federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law." *Cal. Fed. Sav. & Loan Ass'n*, 479 U.S. at 281, 107 S.Ct. 683. Conflict preemption occurs when compliance with both state and federal laws is impossible, *Fla. Lime Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), or when the state law is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

## II.

We now turn to the question of whether Minn.Stat. § 256B.15, subd. 1a, which requires Medicaid recovery against the estate of a surviving spouse, is preempted by federal law, particularly 42 U.S.C. § 1396p(b)(1)(B). Because only conflict preemption may be applicable, we seek to determine whether compliance with both statutes is impossible or whether the state law stands as an obstacle to accomplishment of the purposes of the federal law.

The County seeks recovery here under subdivision 1a of section 256B.15, which authorizes—indeed requires—recovery of Medicaid benefits from the estate of the surviving spouse of a recipient. The Estate argues that this state law authorization to recover from the estate of the surviving spouse is preempted because it conflicts with 42 U.S.C. § 1396p(b)(1), which prohibits recovery of correctly paid Medicaid benefits except from the estate of the recipient of the benefits.

██ The federal statute establishes a general prohibition against recovery of correctly paid Medicaid benefits, subject to three specified exceptions:

(1) *No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except* that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan *in the case of the following individuals:*

42 U.S.C. § 1396p(b)(1) (emphasis added). Only one exception potentially applies to the circumstance of this case:

(B) In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery *from the individual's estate * * *.*

*Id.* § 1396p(b)(1)(B) (emphasis added). Because this express exception to the general rule against recovery of Medicaid benefits directs that recovery come from the recipient's estate and makes no reference to a surviving spouse's estate, the Estate argues that recovery from the surviving spouse's estate is not allowed under federal law. Because exceptions to a general statement of policy are to be construed narrowly, *Comm'r v. Clark*, 489 U.S. 726, 739, 109 S.Ct. 1455, 103 L.Ed.2d 753 (1989), it appears on its face that recovery from the surviving spouse's estate is not permitted by federal law.

Two courts have agreed with this analysis and concluded that section 1396p(b)(1)(B) authorizes recovery only from the recipient's estate and does not allow recovery from the estate of a surviving spouse. *Hines v. Dep't of Pub. Aid*, 221 Ill.2d 222, 302 Ill.Dec. 711, 850 N.E.2d 148, 152–53 (2006); *In re Estate of Budney*, 197 Wis.2d 948, 541 N.W.2d 245, 246 (1995), *rev. denied* 546 N.W.2d 471 (Wis. 1996). The Wisconsin Court of Appeals explained that the federal statute never "counter[ed] the initial blanket prohibi-

tion" on recovery by authorizing recovery from the surviving spouse's estate. *Budney*, 541 N.W.2d at 246. The Illinois Supreme Court noted that under federal and Illinois law, the state had authority to seek reimbursement from the recipient's estate after the death of his surviving spouse. *Hines*, 302 Ill.Dec. 711, 850 N.E.2d at 153. But instead, as here, the state sought recovery from the estate of the surviving spouse. *Id.* The court explained that federal law allows only three exceptions under which a state may seek reimbursement and "[a]ll are specifically directed to the estate of the recipient. No provision is made for collection from the estate of the recipient's spouse." *Id.* The court declined to add to the unambiguous language of the federal statute or to recognize exceptions beyond those specified in the federal law. *Id.*

The Commissioner argues that *Hines* and *Budney* were wrongly decided, misinterpreting the federal statute, particularly in light of the presumption against preemption. The County contends that this statutory exception to the nonrecovery principle allows recovery generally against individuals who received benefits after age 55, and does not narrowly limit the sources of recovery. The County asserts that the reference to the individual's estate is merely a designation of the timing for recovery rather than a limit on the scope of recovery, because the language does not say that the state may recover "only" from the individual's estate. The County argues that, absent such express limiting language, and applying the presumption against preemption, section 1396p(b)(1)(B) merely specifies one potential source of recovery, the recipient's estate, and does not preclude others, such as a spouse's estate.

In our view, the plain language of section 1396p(b)(1)(B) comports far more closely with the interpretation of the Illinois Supreme Court in *Hines* than with the County's expansive view of the authority imparted by that provision. Moreover, we know of no court that has adopted the County's broad view of that language alone. Indeed, in explaining the then-existing law in a report on proposed OBRA amendments in 1993, a House Report referred only to the possibility of recovery from the estate of the recipient, even when describing recovery after the death of a surviving spouse:

> Under current law, a State has the option of seeking recovery of amounts correctly paid on behalf of an individual under its Medicaid program *from the individual's estate* if the individual was 65 years or older at the time he or she received Medicaid benefits. The State may not seek recovery *from the beneficiary's estate* until the death of the surviving spouse, if any, and only if the individual has no surviving minor or disabled child.

H.R.Rep. No. 103–111, at 208 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 378, 535 (emphasis added). In contrast, describing the proposed 1993 amendments to the Medicaid recovery law passed by the House, the same House Report stated that newly-required state estate recovery programs would have to "provide for the collection of the amounts correctly paid by Medicaid on behalf of the individual for long-term care services from the estate of the individual *or the surviving spouse.*" *Id.* Thus, when the House wanted to describe recovery from the surviving spouse's estate, it said so clearly.

Nevertheless, despite the seemingly plain language providing only for recovery from the recipient's estate, we acknowledge that several courts have interpreted the federal recovery provisions to allow recovery from the estate of a surviving

spouse. The courts reaching this conclusion have for the most part relied on the 1993 amendments to the federal law that allow the states to adopt an expanded definition of estate for purposes of Medicaid recovery. For example, the New York Court of Appeals explained, in dicta, that although federal law did not expressly provide for recovery of Medicaid payments from the "secondarily dying spouse's estate," the 1993 amendments gave the states power to recover against the spouse's estate for certain categories of assets. *In re Estate of Craig,* 82 N.Y.2d 388, 604 N.Y.S.2d 908, 624 N.E.2d 1003, 1006 (1993). The North Dakota Supreme Court agreed with the *Craig* interpretation that the 1993 expanded estate provision gave the states the option to recover against a surviving spouse's estate assets conveyed through joint tenancy or right of survivorship. *In re Estate of Thompson,* 586 N.W.2d 847, 850 (N.D.1998). Indeed, the court in *Thompson* rejected the ruling in *Budney* that recovery against a surviving spouse's estate is not allowed under federal law on the basis that the *Budney* court had not considered the optional expanded definition of "estate." *Thompson,* 586 N.W.2d at 850. The North Dakota court concluded that "consideration of all the relevant statutory provisions, in light of the Congressional purpose to provide medical care for the needy, reveals a legislative intention to allow states to trace the assets of recipients of medical assistance and recover the benefits paid when the recipient's surviving spouse dies." *Id.* at 851. The court explained that, under the circumstances, it made no difference whether recovery was from one estate or the other:

> Because the expansive federal definition of "estate" in 42 U.S.C. § 1396p(b)(4) extends only to assets in which the medical assistance benefits recipient "had any legal title or interest in at the time of death," *it is a matter of little moment whether the department seeks to recover the benefits paid by filing a claim in the estate of the recipient after the death of the recipient's surviving spouse or by filing a claim in the surviving spouse's estate.*

*Id.* n. 3 (emphasis added). Finally, in *Idaho Department of Health and Welfare v. Jackman,* 132 Idaho 213, 970 P.2d 6, 9–10 (1998), the Supreme Court of Idaho also ruled that some recovery of Medicaid benefits could be made from the estate of a surviving spouse, but held that such recovery was preempted by federal law except to the extent of assets that had been in the recipient's estate as defined by state probate law.

These courts provide little explanation for their conclusions that the statutory language expressly mentioning recovery only from the recipient's estate also allows recovery from the surviving spouse's estate. We infer that the courts viewed the authority to recover from assets that were part of the recipient's estate after the death of the surviving spouse to fairly imply authority to recover those assets from the surviving spouse's estate to which they had passed on the death of the recipient. In other words, to the extent assets in the surviving spouse's estate are there because they had passed to the surviving spouse from the estate of the recipient, recovery from those assets in the surviving spouse's estate is, in essence, recovery from the recipient's estate.

The Ninth Circuit Court of Appeals appears to have made a similar unspoken inference in assessing preemption of California Medicaid recovery laws in two cases. *Bucholtz v. Belshe,* 114 F.3d 923 (9th Cir.1997); *Citizens Action League v. Kizer,* 887 F.2d 1003 (9th Cir.1989), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990). In both cases, the

Ninth Circuit addressed whether California's Medicaid recovery law was preempted by pre–1993 amendment federal law. The California law allowed the state to seek recovery not only from the estate of the deceased Medicaid recipient, but " 'against any recipient of the property of that decedent by distribution or survival.' " *Kizer*, 887 F.2d at 1005 (quoting Cal. Welf. & Inst.Code § 14009.5 (West Supp.1989)). Thus, California law allowed the state to trace assets of the deceased Medicaid recipient and seek reimbursement from the recipients of those assets.

In *Kizer* the plaintiffs were individuals who had owned property in joint tenancy with a Medicaid recipient and had succeeded to ownership by right of survivorship upon the death of the Medicaid recipient. *Id.* at 1005. To determine whether California's claimed right of recovery from these surviving joint tenants was inconsistent with federal law, the court looked to section 1396p(b)(1)(B), which, as discussed above, provided the general prohibition against recovery with the exception for individuals who were 65 years old when they received assistance. *Id.* at 1006. The Ninth Circuit noted that the federal statute provided only for recovery from the individual's "estate," and in the absence of a federal statutory definition of estate, looked to common law for the meaning of the term. *Id.* at 1006. The court held that an "estate" under common law did not include property held in joint tenancy at death, and therefore the California law that allowed recovery against such property went beyond the recipient's estate and was too broad. *Id.* at 1008. The court in *Kizer* did not expressly address the issue of whether assets within the definition of "estate" could only be reached by a claim against the recipient's estate, or whether federal law would permit the state to follow those assets and

make the claim against a surviving joint tenant—or, as here, a surviving spouse.

Several years later, still applying pre–1993 federal law, the Ninth Circuit again addressed a preemption challenge to the same broad California Medicaid recovery provision. *Bucholtz*, 114 F.3d at 924. At issue in *Bucholtz* was application of the state recovery law to assets of Medicaid recipients that had been subject to three forms of joint interests: inter vivos trusts, tenancy in common, and community property. *Id.* at 924. The court applied the *Kizer* principle that " 'use of the word "estate" in the [federal] recoupment provision limits a state's recovery to property which descends to the recipient's heir or the beneficiaries of the recipient's will upon death,' " *id.* at 925 (quoting *Kizer*, 887 F.2d at 1005), to each of the forms of shared interest at issue. The court concluded that, like the joint tenancy in *Kizer*, property held in an inter vivos trust is not part of the decedent's estate under California common law, and therefore was not part of the estate subject to recovery under the federal law. *Id.* at 926. In contrast, the court explained, a decedent's interest in property held in tenancy in common or community property is subject to disposition and administration as part of the decedent's estate under California law. *Id.* at 926–27. The Ninth Circuit concluded not only that the decedent's interest in property held in those forms was subject to recovery under the federal law, but also held, albeit without explanation, that recovery could be sought from the heirs or beneficiaries who received that property: "[California] may, however, pursue *people who received property* held by the decedent in the form of tenancy in common or community property." *Id.* at 928 (emphasis added). Like other courts, the Ninth Circuit seems to have inferred that the federal law's reference to recovery from the Medicaid recipient's "estate" conferred

authority to follow the assets from that estate and recover them from the people who received the property.

Thus, the courts that have considered the issue are split on the question of whether the narrow reference in section 1396p(b)(1) to recovery from the estate of the Medicaid recipient allows recovery only through a direct claim against that estate, or whether recovery is also allowed from those who received covered assets from the Medicaid recipient's estate, including the estate of a surviving spouse. Were this an ordinary question of statutory interpretation, we would conclude that the plain language of the federal statute provides only for recovery against the Medicaid recipient's estate, as the Illinois court persuasively reasoned in *Hines.* But we are influenced by the principle that preemption of state laws is disfavored, combined with the fact that allowing recovery against a surviving spouse's estate is consistent with both the federal provision precluding recovery from the Medicaid recipient's estate until after the death of a surviving spouse as well as with the purposes of the federal legislation.[7] These additional considerations lead us to conclude that the split in authority, in these particular circumstances, illustrates sufficient ambiguity about the intent of the federal estate recovery language that we cannot say that Minnesota's requirement in Minn.Stat. § 256B.15, subd. 1a, to seek reimbursement from the estate of a surviv-ing spouse conflicts with federal law such that it is preempted.

Accordingly, we hold that federal law does not preclude all recovery from the estate of a surviving spouse, and the authorization in subdivision 1a to make a claim against the estate of a surviving spouse is therefore not preempted. The question remains whether federal law limits the scope of recovery against the estate of a surviving spouse and, in particular, whether that recovery may reach all property previously held by the Medicaid recipient spouse either as marital property or jointly with the surviving spouse during the marriage, as allowed by Minn.Stat. § 256B.15, subd. 2.

### III.

We turn to a determination of whether the scope of recovery from a surviving spouse's estate allowed under Minnesota law is consistent with federal law. Subdivision 2 of Minn.Stat. § 256B.15 allows the state to recover from a surviving spouse's estate "the value of the assets of the estate that were marital property or jointly owned property *at any time during the marriage.*" (Emphasis added.) The County argues that this broad estate recovery authority does not conflict with federal law because the pre–1993 version of section 1396p(b) should be construed broadly and the 1993 amendments were intended to expand, not restrict, state estate recovery authority. In asserting this

---

7. The United States Supreme Court has described Congress's passage of the anti-impoverishment provisions as an effort to "protect community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance." *Wis. Dep't of Health & Family Servs. v. Blumer,* 534 U.S. 473, 480, 122 S.Ct. 962, 151 L.Ed.2d 935 (2002). Allowing recovery from a spouse's estate does not risk impoverishing a community spouse, because the spouse must be dead for the recovery to occur. Nor does it impede the furnishing of Medicaid benefits to other impoverished individuals; indeed, it can be expected to do quite the opposite. *See West Virginia v. U.S. Dep't of Health & Human Servs.,* 289 F.3d 281, 285 (4th Cir.2002) (noting that Congress expected the estate recovery provisions to allow government to realize savings of $300 million over five years, and that the savings have been even greater).

argument for broad estate recovery authority, the County emphasizes that it is consistent with the dual goals of federal law of recouping Medicaid expenses to make assistance available to more qualifying recipients, while protecting community spouses from pauperization during their lifetimes. The Estate argues that, because section 1396p(b)(1) allows recovery only from a recipient's estate and section 1396p(b)(4) allows expansion of the estate only to include assets in which the recipient had an interest at the time of death, the "any time during the marriage" recovery allowed by subdivision 2 is preempted.

The County's argument would take us too far down the path of favoring the purpose of the law at the expense of the plain meaning of its language. Significantly, no court has embraced the County's argument that the pre–1993 federal law authorized recovery from a surviving spouse's estate of assets that were jointly owned during the marriage but transferred by the recipient spouse prior to her death. Indeed, of the courts that have interpreted federal law to allow direct claims against the estate of a surviving spouse, only one has construed that authority to extend to assets that were transferred before the death of the Medicaid recipient, and that court relied on language from the 1993 amendments to support that extension. *See In re Estate of Wirtz,* 607 N.W.2d 882, 885–86 (N.D.2000).

Other courts that have recognized authority to recover from a source other than the Medicaid recipient's estate have construed that authority to reach only assets in which the Medicaid recipient had an interest at the time of her death, that is, assets which were part of the recipient's estate as defined by traditional state probate law or included in the estate under an expanded definition allowed by the 1993 amendments to federal law. *See Bucholtz,*

114 F.3d at 925–27 (limiting recovery to assets that were part of recipient's estate as defined by state probate law); *Kizer,* 887 F.2d at 1006 (same); *Jackman,* 970 P.2d at 8–10 (holding that recovery from surviving spouse's estate allowed by Idaho Medicaid recovery statute is limited by federal law to assets that were part of the Medicaid recipient's estate as defined under state probate law); *Thompson,* 586 N.W.2d at 851 n. 3 (recognizing that "expansive definition of 'estate' in [section] 1396p(b)(4) extends only to assets in which the medical assistance benefits recipient 'had any legal title or interest in at the time of death'"); *see also In re Estate of Smith,* No. M2005–01410–COA–R3–CV, 2006 WL 3114250 at *4 (Tenn.Ct.App. Nov.1, 2006) (explaining that courts that have allowed recovery against estates of surviving spouses have required that recipient had interest in assets at time of death).

Similarly, in relying on the 1993 amendments as authority for recovery from a surviving spouse's estate, our court of appeals acknowledged that the 1993 amendments limit the assets subject to recovery to those in which the Medicaid recipient had a legal interest at the time of her death. *See Gullberg,* 652 N.W.2d at 714 (holding that Minn.Stat. § 256B.15, subd. 2, authorization to reach assets that were marital property or owned jointly at any time during the marriage, is partially preempted by federal law limitation to assets in which recipient had interest at time of death). And the court of appeals acknowledged that limitation again in this case. *Barg,* 722 N.W.2d at 496 ("After *Gullberg,* the state's ability to recover was limited to the recipient's interest in marital or jointly owned property at the time of the recipient's death.").

As noted above, the only decision to deviate from this limiting principle requir-

ing an interest at the time of death is *Wirtz*. Although the North Dakota court had acknowledged in its earlier *Thompson* decision that recovery allowed under section 1396p(b) is limited to assets in which the Medicaid recipient had an interest at the time of death (indeed that was the basis on which the court rationalized allowing recovery from the surviving spouse's estate), 586 N.W.2d at 851 n. 3, the court held in *Wirtz* that any assets conveyed by the Medicaid recipient to his spouse before his death were subject to recovery from the surviving spouse's estate, 607 N.W.2d at 886. The court stated that limiting recovery under section 1396p(b) to "assets in the surviving spouse's estate that the Medicaid recipient had legal title to and conveyed through joint tenancy, tenancy-in-common, survivorship, life estate, or living trust" would ignore the words "interest" and "other arrangement" in the federal law. *Wirtz*, 607 N.W.2d at 885. Concluding that the words "interest" and "other arrangement" are ambiguous, the court relied on the Congressional intent it perceived "to allow states a wide latitude in seeking Medicaid benefit recoveries." *Id.* at 885–86. The court did not explain why the same purpose acknowledged in *Thompson* was consistent with the limitation to recovery from assets in which the recipient had an interest at the time of death, yet also justified abandoning that limitation in *Wirtz*.

■ We cannot agree that the "other arrangement" language in the 1993 amendment is ambiguous in the sense implied in *Wirtz*. The plain meaning of "other arrangement," read in the context of section 1396p(b)(4), is arrangements other than those expressly listed that also convey assets at the time of the Medicaid recipient's death.

We return again to the language of the federal statute. The federal optional definition of "estate" allows inclusion of

> any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including *such assets* conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

42 U.S.C. § 1396p(b)(4)(B) (emphasis added). The "including" clause further describes the assets that a state may include in this expanded estate. The clause describes those assets in two ways—first by the limiting adjective "such," and second by the language describing how and to whom "such assets" are "conveyed." The "such" limitation plainly refers back to the immediately preceding clause describing the assets as those "in which the individual had any legal title or interest at the time of death." The including clause then describes to whom "such" assets may have been conveyed—a "survivor, heir, or assign *of the deceased individual.*" *Id.* (emphasis added). And finally, the clause describes several methods by which the conveyance of "such" assets might take place—"through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement." *Id.*

■ Inclusion in the list of examples of "such assets" is predicated on the recipient having a legal interest at the time of death. When we construe a federal statute we must, if at all possible, give effect "to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). To read "other arrangement" to include a lifetime transfer would be to read the words "at the time of death" out of the statute. The conclusion that "other arrangement" can-

not include lifetime transfers is further supported by the additional context. "[O]ther arrangement" ends a list of examples of conveyances that occur at the time of death. The list of recipients of the conveyance, "a survivor, heir, or assign of the deceased individual," leaves no doubt that the "individual," a Medicaid recipient, must have died for the conveyance to occur. A recipient cannot have heirs or survivors during his or her lifetime. Nor can there be an "assign of the deceased" during the recipient's lifetime. In light of the plain statutory language and its context, the conclusion of the *Wirtz* court that "other arrangement" is sufficiently ambiguous to include lifetime transfers is unreasonable.

■ We conclude that there is no principled basis on which to interpret the federal law to allow recovery of assets in which the Medicaid recipient did not have an interest at the time of her death. As explained above, the rationale for finding authority to recover from a surviving spouse's estate at all emanates from the authority granted in the federal law to recover from the "estate" of the Medicaid recipient. Property transferred prior to death would not be part of the recipient's estate. Further, as recognized by every decision except *Wirtz*, to the extent the 1993 amendments allow states to expand the definition of "estate" for Medicaid recovery purposes, the language of the federal law clearly limits that expansion to assets in which the recipient had an interest at the time of her death. Accordingly, we hold that Minn.Stat. § 256B.15, subd. 2, is partially preempted to the extent that it authorizes recovery from the surviving spouse's estate of assets that the recipient owned as marital property or as jointly-owned property *at any time* during the marriage. To be recoverable, the assets must have been subject to an interest of the Medicaid recipient at the time of her death.

## IV.

This brings us to the question of whether Dolores Barg had any interest in property at the time of her death that would allow the County to make a claim against the estate of her surviving spouse, despite her transfer of her joint interest in the property prior to her death. As we have noted, the court of appeals acknowledged the interest-at-time-of-death limitation on spousal estate recovery, but nevertheless found that for these purposes Dolores retained a joint tenancy interest at the time of her death that made the value of that interest recoverable from Francis's estate. *Barg,* 722 N.W.2d at 496, 497. Eschewing reference to either marital property law or probate law to determine the nature of any interest at the time of death, the court of appeals looked to standard real property law and *Gullberg* in deciding that Dolores retained a joint tenancy interest. *Id.* at 496–97. We do not agree.

■ The court of appeals determined that Dolores retained a joint tenancy interest in the property based on its understanding that the court in *Gullberg* had recognized a continuing joint tenancy interest because the lifetime transfer was an "other arrangement," and because the court apparently understood section 1396p(b)(4) to "explicitly allow[ ] a state to broaden the definition [of estate] beyond the meaning used in probate law and to include joint-tenancy interests *that have been previously conveyed to a spouse.*" *Id.* at 497. Section 1396p(b)(4) cannot be construed to include lifetime transfers of property in the phrase "other arrangement" because the plain language and the context require that phrase to be limited to conveyances occurring upon the death of the recipient. For that reason, we can-

not agree with the court of appeals' characterization of section 1396p(b)(4) as allowing the expanded definition of estate to include "previously conveyed" joint tenancy interests. The language of section 1396p(b)(4) requires that any interest included in the expanded estate must be one in which the Medicaid recipient had an interest at the time of her death, not one that was previously conveyed. We conclude that Dolores did not retain a joint tenancy interest in the property at the time of her death, because that interest was effectively and legally transferred before her death.

The question remains whether Dolores had any other interest in the property at the time of her death that may be considered part of an expanded estate for recovery purposes under Minnesota law. We agree with the court of appeals that courts should not look to marital property law to find such an interest, because the statute in which marital property is defined limits the definition to the purposes of that chapter. Minn.Stat. § 518.003, subds. 1, 3b (2006);[8] see Barg, 722 N.W.2d at 496. Similarly, we agree that the recognizable interests at the time of death cannot be limited to those defined by probate law, because the purpose of section 1396p(b)(4) is to allow states to expand the definition of estate beyond probate law. See Barg, 722 N.W.2d at 497. We therefore agree that real property law principles, informed by principles of probate law, should be the basis for ascertaining any interests at the time of death. Any interest recognized must be consistent with the underlying foundational rationale that recovery from a surviving spouse's estate is allowed only because of its relationship to the recipient's estate, from which federal law expressly allows recovery. With those principles in mind, we caution that for an interest to be traceable to and recoverable from a surviving spouse's estate, the interest must be (1) an interest recognized by law, (2) which the Medicaid recipient held at the time of death, and (3) that resulted in a conveyance of an interest of some value to the surviving spouse that occurred as a result of the recipient's death. Further, to the extent the interest is not part of the standard probate estate, Minnesota law must have expanded the definition of estate to include the interest, as authorized by section 1396p(b)(4).

Dolores's joint ownership in the homestead and certificates of deposit no longer existed at the time of her death. No other recognizable interest has been identified.

The County argues that the reference to marital property in subdivision 2 reflects the Minnesota legislature's intent to make all marital property subject to spousal estate recovery. But subdivision 2 makes no reference to an interest at the time of death or to re-defining the probate estate to include all marital property, even property transferred prior to death. This is not surprising because subdivision 2 was enacted long before the optional estate definition authority was added to federal law.

The district court indicated that because Dolores was married to Francis even after the transfer of her interest in the homestead, she retained some interest in the property. But whatever that interest, it dissipated at Dolores's death, rather than resulting in transfer of an interest of value to Francis.

We conclude that Dolores had no interest in assets at the time of her death that were part of a probate estate or an expanded estate definition permissible under federal law, and therefore there is no

---

8. Formerly Minn.Stat. § 518.54, subds. 1, 5 (2004).

basis for the County's claim against the estate.

Finally, we note that in 2003 the Minnesota legislature amended section 256B.15 by extending the definition of estate for Medicaid recovery purposes to include assets owned by a recipient spouse in joint tenancy or life estate at the time of her death. Act of June 5, 2003, ch. 14, art. 12, §§ 40–50, 2003 Minn. Laws 1st Spec. Sess. 1751, 2205–2217 (codified as amended at Minn.Stat. § 256B.15, subds. 1, 1c–1k). The amendments do not mention the other forms of conveyance at death listed in the federal definition of "estate," except that the "right of survivorship" is mentioned with respect to joint tenancies. *Id.* subds. 1(a)(6), 1g, 1h(b). Thus, the legislature chose only to include two forms of ownership in the expanded definition of estate. Also, as provided in the federal law, the inclusion of joint tenancy and life estate interests in the recipient's estate is expressly limited to interests the recipient owned at the time of death. Minn.Stat. § 256B.15, subds. 1h(b)(2), 1i(a). The amendments further limit the scope of recovery by exempting from the reach of subdivisions 1c through 1k a "homestead owned of record, on the date the recipient dies, by the recipient and the recipient's spouse as joint tenants with a right of survivorship." Minn.Stat. § 256B.15, subd. 1(a)(6). In 2005, the legislature retroactively made the provisions continuing life estates and joint tenancies effective only for life estate and joint tenancy interests created on or after August 1, 2003. Act of July 14, 2005, 1st Spec. Sess., ch. 4, art. 7, 2005 Minn. Laws 2454, 2649 (codified at Minn.Stat. § 256B.15, subd. 1(c)).

It is difficult to discern the intended reach of the 2003 amendments.[9] If the pre–2003 law allowed recovery against the surviving spouse's estate as argued by the County, there was little need to enact the 2003 amendments to reach those assets in the case of a recipient who leaves a surviving spouse. The parties apparently agree that the 2003 amendments do not apply to or influence this case, for reasons that are not clear to us.

It suffices to say that even if the 2003 amendments were applicable, they would provide no basis for the County's claim. The new subdivision 1i specifically applies to circumstances in which a Medicaid recipient against whom a recovery claim could otherwise be filed is survived by a spouse. Minn.Stat. § 256B.15, subd. 1i(b). That subdivision provides procedures for filing a claim without making a recovery until the death of the surviving spouse. *Id.,* subd. 1(f). If this subdivision were to be applied to this case, several limitations would preclude recovery. Dolores Barg, the recipient, owned no life estate or joint tenancy interest at the time of her death. If she had owned a joint tenancy at the time of her death, it would have been a homestead owned of record by her and her spouse as joint tenants with a right of survivorship, and thus exempted from the reach of subdivision 1i. *Id.,* subd. 1(a)(6). Finally, that joint tenancy was established in the 1960s, well before August 1, 2003.

In summary, we hold that federal law does not preempt all Medicaid recovery from spousal estates, and Minn.Stat. § 256B.15, subd. 1a, is therefore not preempted to the extent it allows claims against the estate of a surviving spouse of a Medicaid recipient. However, the allowable scope of spousal estate recovery is limited. Subdivision 2 of section 256B.15 is preempted to the extent that it allows recovery from assets in which the deceased Medicaid recipient did not have a legal interest at the time of death, and to

---

**9.** The parties' supplemental briefs shed little    light on this question.

the extent that it permits recovery beyond the extent of the recipient's interest. Finally, we hold that Dolores Barg had no interest in property at the time of her death that can form the basis for recovery against the estate of Francis Barg.

V.

■ We have concluded that the County's claim for full recovery against all the assets in Francis Barg's estate was preempted by federal law because recovery is limited to assets in which Dolores had an interest at the time of her death, but the question of the appropriate remedy remains, because the County argues that the Estate waived the right to deny the claim in its entirety. Although we have decided as a matter of law in our preemption analysis that the state is preempted from requiring reimbursement from assets in a spouse's estate in which the recipient spouse had no interest at the time of her death, that does not resolve the remedy issue here. Although a state may not compel payment from a spouse's estate beyond the scope authorized by federal law, federal preemption does not preclude an estate from voluntarily paying all or part of a claim that could not be compelled.

■ Here, the Estate only partially disallowed the County's claim, thus allowing the remainder of the claim. Minnesota Statutes § 524.3–806(a) (2006) provides that, on petition of the personal representative after notice to the claimant, the court may "for cause shown permit the personal representative to disallow" a previously-allowed claim. But the personal representative made no such request here. When questioned at the hearing in district court whether the personal representative was challenging the entire claim of the County, the representative affirmed that he was challenging only the part already disallowed. When the district court af-

firmed that partial disallowance and the County appealed, the Estate did not file a notice of review in the court of appeals to challenge the implicit award to the County of the allowed part of its claim. A respondent who does not file a notice of review to challenge an adverse ruling of the district court waives that issue in the court of appeals. See Minn. R. Civ.App. P. 106; Ford v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 294 N.W.2d 844, 845 (Minn. 1980). Having partially allowed the County's claim and having then failed to properly seek a reversal of that allowance in both the district court and court of appeals, the Estate will not be permitted to seek that relief for the first time in this court.

Accordingly, the decision of the court of appeals is affirmed in part and reversed in part. The court's denial of the County's claim for full recovery is affirmed. The court's remand for an award to the County based on the existence of a joint tenancy interest is reversed. The matter is remanded to the district court for entry of judgment based on the partial allowance made, but not subsequently challenged, by the Estate.

Affirmed in part and reversed in part.

ANDERSON, PAUL H., J., took no part in the consideration or decision of this case.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.